[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 143.]

LOVEWELL *v*. PHYSICIANS INSURANCE COMPANY OF OHIO, APPELLANT;

SATAYATHUM, APPELLEE.

[Cite as *Lovewell v. Physicians Ins. Co. of Ohio*, 1997-Ohio-175.]

*Insurance—Medical malpractice—No coverage for a prejudgment interest award*
*shall be implied under a medical malpractice insurance policy, when.*

(No. 95-2433—Submitted February 19, 1997—Decided June 25, 1997.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 68542.

_____

{¶ 1} This dispute arose as the result of a lawsuit filed by Frank Lovewell against his doctor, appellee, Pradist Satayathum, M.D., for medical malpractice. Lovewell obtained a jury verdict in his favor and subsequently moved the trial court for an award of prejudgment interest under R.C. 1343.03(C). At the hearing on the motion, the trial judge ruled that Lovewell had met the statutory requirements and was entitled to an award for prejudgment interest in the amount of $101,753.42.

{¶ 2} Dr. Satayathum's policy with his malpractice insurer, appellant, Physicians Insurance Company of Ohio ("PICO"), included a provision reserving to him the right to prevent PICO from entering into any settlement without his consent. Prior to trial, Dr. Satayathum had exercised that right and refused to consent to a settlement of Lovewell's claims. When requested to cover the prejudgment interest award on behalf of Dr. Satayathum, PICO denied coverage. PICO reasoned that Dr. Satayathum's refusal to consent to a settlement was the act that resulted in the prejudgment interest award, and, therefore, that Dr. Satayathum was responsible for paying the award himself.

{¶ 3} Lovewell then instituted the present action against Dr. Satayathum and PICO for payment of the prejudgment interest award. Dr. Satayathum cross-claimed against PICO for coverage. The trial court granted summary judgment to

Lovewell and Dr. Satayathum against PICO. On April 4, 1995, the court issued a *nunc pro tunc* entry ordering that PICO pay the prejudgment interest award.

{¶ 4} Upon PICO's appeal, the Eighth District Court of Appeals affirmed, holding that the clear, unambiguous language of the malpractice policy was broad enough to provide Dr. Satayathum with coverage for an award of prejudgment interest.

{¶ 5} The matter is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Hammond Law Office and Gary W. Hammond*, for appellant.

*Sam A. Zingale*, for appellee.

_____

**MOYER, C.J.**

{¶ 6} The question presented is whether a medical malpractice insurer can be held liable for an award of prejudgment interest when its insured, acting pursuant to a contract right, withholds consent to any settlement offer by the insurer, and the trial court finds, under R.C. 1343.03(C), that the party required to pay failed to make a good faith effort to settle the case. For the reasons that follow, we hold that such insurer is not liable for coverage of the prejudgment interest award, and we therefore reverse the judgment of the court of appeals.

{¶ 7} The parties agree that this case raises no genuine issue of material fact and that the dispute before the court involves only questions of law that were appropriate for determination on summary judgment. Resolution of this case turns on the construction of the contract of insurance between Dr. Satayathum and PICO. It is well established that the construction of contracts is a matter of law to be resolved by the court. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. "Unlike determinations of fact which are given great deference, questions of law are

reviewed by a court *de novo*." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm.* (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286, 287.

{¶ 8} At the time this suit was commenced, the controlling statute was former R.C. 1343.03(C). The statute provided:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." (139 Ohio Laws, Part I, 2035.)

{¶ 9} Regarding the purpose of the statute, we have previously stated, "R.C. 1343.03(C) 'was enacted to promote settlement efforts, to prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases, and to encourage good faith efforts to settle controversies outside a trial setting.' *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 159, 25 OBR 201, 202, 495 N.E.2d 572, 574 [other citations omitted]. In addition to promoting settlement, R.C. 1343.03(C), like any statute awarding interest, has the additional purpose of compensating a plaintiff for the defendant's use of money which rightfully belonged to the plaintiff." *Musisca v. Massillon Community Hosp.* (1994), 69 Ohio St.3d 673, 676, 635 N.E.2d 358, 360.

{¶ 10} By the terms of R.C. 1343.03(C), prejudgment interest is awarded not because the party required to pay was negligent in providing medical care or otherwise, but because the party (or the representative of the party) failed to make a good faith effort to settle. The statute does not directly address, however,

allocation of the payment burden for prejudgment interest between a tortfeasor and its insurer.

**{¶ 11}** We have previously noted that the named defendant is "ultimately responsible for payment of a judgment rendered against her and for payment of any prejudgment interest thereon." *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 166, 25 OBR 207, 209, 495 N.E.2d 918, 921. In the absence of statutory mandate or contractual agreement, the liability for a prejudgment interest award must fall upon the named party. Having determined that the statute does not resolve the question of liability between Dr. Satayathum and his insurer, we look to the provisions of the contract of insurance and to the public policy underlying R.C. 1343.03(C).

**{¶ 12}** It is axiomatic that the language of the insurance contract between Dr. Satayathum and PICO determines their respective rights and obligations subject to the limitations of the law. Because neither the statute in question nor the case law expressly assigns liability to insurer or insured in the event of an award of prejudgment interest under R.C. 1343.03(C), we agree with the conclusion of the court of appeals that the terms of the contract must govern our resolution of the issue.

**{¶ 13}** The policy contract provides in pertinent part:

"A. What This Policy Covers --

" * * *

"We will pay on your behalf all sums, up to the Limits of Liability stated on your Certificate of Insurance, which you become legally obligated to pay as DAMAGES because of a MEDICAL INCIDENT arising out of your individual practice as a physician or surgeon during the COVERAGE PERIOD stated on the Certificate of Insurance. ***

" * * *

"*** We will settle claims or suits only with your written consent.

" * * *

"D.  Conditions

"1.  Definitions -- When used in this policy:

"'MEDICAL INCIDENT' means any act or omission in the furnishing of PROFESSIONAL MEDICAL SERVICES by you, any of your employees, or any other person acting under your personal direction, control, or supervision.

"'PROFESSIONAL MEDICAL SERVICES' means any services rendered in your individual practice as a physician or surgeon and includes the dispensing of drugs or medicine and your service as a member of a formal accreditation or professional society.

"'DAMAGES' means all DAMAGES which are payable because of INJURY (including damages for death) to which this insurance applies, including any counter claims in suits brought by you to collect fees.  It does not include punitive or exemplary damages.

"'INJURY' means physical or mental injury, sickness, or disease sustained by any person which occurs during the COVERAGE PERIOD, including death resulting therefrom."

**{¶ 14}** The court of appeals held that "the language of the coverage provision, '* * * <u>all sums</u>, * * * which [the insured] * * * legally become[s] obligated to <u>pay as DAMAGES because of a MEDICAL INCIDENT</u>,' is broad enough to afford coverage for an award of prejudgment interest."  (Emphasis *sic*.)  We disagree.

**{¶ 15}** The contract provides coverage for damages the policyholder becomes obligated to pay because of a medical incident.  "Medical incident" is defined in the policy as "any act or omission in the furnishing of professional medical services by you, any of your employees, or any other person acting under your personal direction, control, or supervision."  It is undisputed that Lovewell's original judgment resulted from a medical incident and that Dr. Satayathum's policy provided coverage for the judgment.  The question before us is whether the

subsequent award of prejudgment interest constitutes damages payable "because of a medical incident" under the policy. We conclude that it does not.

{¶ 16} It is true that the medical incident giving rise to this lawsuit constitutes a "but for" cause of the award of prejudgment interest. Without the underlying tort and following judgment, there could clearly be no award of prejudgment interest. However, there are countless judgments for plaintiffs in medical malpractice actions that are not followed by a prejudgment interest award—indeed, these are the large majority of such judgments. It necessarily follows, then, that the failure to exercise good faith in refusing to negotiate a settlement is the actual cause of an award of prejudgment interest under R.C. 1343.03(C), as opposed to the medical incident itself. Such failure to exercise good faith, therefore, does not constitute damages Dr. Satayathum became obligated to pay because of a medical incident.

{¶ 17} Dr. Satayathum urges that established rules of contract construction require us to hold, as did the court of appeals, that the policy language covers awards of prejudgment interest. He relies on the following two general rules of contract construction: (1) insurance contracts are to be construed liberally in favor of the insured and strictly against the insurer; (2) with regard to exceptions, qualifications, and exemptions, that which is not specifically excluded from coverage must be included.

{¶ 18} We are not persuaded by these arguments for the reason that the language of the contract is not ambiguous. We agree with PICO that the language of the contract at issue does not purport expressly, or by implication, to provide coverage for an award of prejudgment interest. Consequently, we are bound by the clear language of the contract and may not expand its language to include coverage that was clearly not intended by either party to the agreement. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102.

**{¶ 19}** Dr. Satayathum's insurance policy contains no provision expressly granting coverage of prejudgment interest awards. By contrast, the contract does contain a provision expressly covering postjudgment interest awards under certain circumstances. Indeed, as PICO argues, the contract provides specifically for certain "Supplementary Payments," including postjudgment interest awards, none of which includes prejudgment interest awards. By implication, the express inclusion of coverage for postjudgment interest awards and the absence of any reference to prejudgment interest awards make clear that the intent of the parties was not to contract for coverage of prejudgment interest awards.

**{¶ 20}** The substantive difference between postjudgment and prejudgment interest awards supports our conclusion. The purpose of postjudgment interest awards is to guarantee a successful plaintiff that the judgment will be paid promptly, and to prevent a judgment debtor from profiting by withholding money belonging to the plaintiff. *Overbeek v. Heimbecker* (C.A.7, 1996), 101 F.3d 1225, 1228. A postjudgment interest award is routine in cases of tortious conduct and requires no special hearing before the trial court. R.C. 1343.03(A).

**{¶ 21}** In contrast, the purpose of a prejudgment interest award, as stated above, is the encouragement of settlement of meritorious claims, and the compensation of a successful party for losses suffered as a result of the failure of an opposing party to exercise good faith in negotiating a settlement. See *Musisca v. Massillon Community Hosp*., 69 Ohio St.3d at 676, 635 N.E.2d at 360. It is an extraordinary award that requires a hearing and showing of no good faith. R.C. 1343.03(C). Thus, there can be no doubt that prejudgment interest and postjudgment interest awards are qualitatively different. The inclusion of one in coverage, therefore, cannot imply the inclusion of the other.

**{¶ 22}** Furthermore, we hold that a prejudgment interest award, arising as a consequence of an express finding for failure to exercise good faith, cannot, either

as a matter of logic or of public policy, constitute an implied coverage by virtue of its absence from the list of policy exclusions.

{¶ 23} Dr. Satayathum also argues that prejudgment interest is compensatory rather than punitive and that we should therefore hold the award covered under his policy with PICO. He contends that because prejudgment interest is classified as compensatory, it relates to the focal point of the underlying litigation -- the medical incident -- and thus constitutes damages arising therefrom under the policy definitions.

{¶ 24} It is true that we have elsewhere stated that prejudgment interest is compensatory in nature and that it is not intended as a punitive measure taken against the defendant. See *Galayda v. Lake Hosp. Sys., Inc.* (1994), 71 Ohio St.3d 421, 427, 644 N.E.2d 298, 303. There is, however, a fatal flaw in Dr. Satayathum's reasoning. The fact that prejudgment interest is compensatory rather than punitive does not establish that it is compensation for injury suffered as the result of a medical incident. Indeed we specifically hold that it is not. Rather, as we observed above, prejudgment interest is compensation for failure to negotiate in good faith. The proper inquiry, then, is not whether the damages are compensatory, but which party is responsible for the failure of good faith. In the absence of a finding by the trial court that the insurer was the party responsible for the failure to exercise good faith, we cannot imply a contractual term that does not exist in order to shift liability to the insurer.

{¶ 25} We observe also that it makes sense to allocate liability for a prejudgment interest award to the party responsible for the failure to exercise good faith and who thereby generated the damage that the award seeks to compensate. It would be difficult to justify holding an insurer liable for a prejudgment interest award where the contract does not provide such coverage and where the insured has prevented the insurer from engaging in good faith settlement negotiations. Holding the insurer liable for a prejudgment interest award under such

circumstances would shift the responsibility of payment from the party who caused the judgment to be rendered, to another entity. Such a result is supported by neither law nor logic.

{¶ 26} We hold, therefore, that where an insured exercises a contract right to preclude an insurer from entering settlement negotiations, where the contract of insurance contains neither an express provision of coverage nor an express exclusion of coverage for a prejudgment interest award, and where the trial court finds a failure to exercise good faith under R.C. 1343.03(C), no coverage for a prejudgment interest award shall be implied under the contract.

{¶ 27} Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*

*and cause remanded.*

PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment only.

DOUGLAS, J., dissents.

RESNICK and F.E. SWEENEY, JJ., dissent and would affirm the judgment of the court of appeals.

───────────────

**COOK, J., concurring in judgment only.**

{¶ 28} I differ with the analysis of this case employed by the lead opinion and, therefore, must concur in judgment only.

{¶ 29} The lead opinion commingles the concepts of liability for the prejudgment interest ("PJI") award and the contractual right to coverage when they are distinct inquiries. In my view, we are required to answer two questions in this case. First, who is liable to the plaintiff, Lovewell, for the payment of the PJI award? We resolve this question by looking to R.C. 1343.03(C) and relevant case law. If the doctor, the named defendant in the action, is liable for the PJI award,

then we reach the second question. Is the doctor's liability for the PJI award covered under his insurance policy with PICO? We resolve this second question by looking solely to the terms of the contract between the doctor and PICO.

{¶ 30} On the issue of who is liable to Lovewell for the payment of PJI, the lead opinion cites *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 166, 25 OBR 207, 209, 495 N.E.2d 918, 921, holding that the named defendant is ultimately responsible for payment of PJI. Nonetheless, the lead opinion seems to abandon that principle by saying that both R.C. 1343.03 and relevant case law leave open the question of whether the insurer or insured is liable for the PJI award. R.C. 1343.03 and *Peyko*, however, answer the question. A PJI award, by definition, assumes a *judgment*. A judgment is entered against a *party to the action*. This is plain from the language of R.C. 1343.03(C) and its repeated use of the term "party." Here, the doctor is the party to the action and only he is liable under the statute for the PJI award.[1]

{¶ 31} The second distinct question, then, is whether the party to the action has coverage for PJI. Only the contract between the insurer and the insured answers this question and any discussion of the PJI award statute in relation to this subject by the lead opinion is misplaced. Lovewell did not seek to recover a judgment against PICO under R.C. 1343.03(C). Lovewell had no cause of action under R.C. 1343.03(C) against PICO; PICO owed no duty to him nor were they in privity. Lovewell's only avenue to PICO was through a declaratory judgment action to obtain a declaration as to whether the physician's policy covered the PJI award.

{¶ 32} Although the lead opinion holds that the contract at issue does not provide coverage, the lead opinion appears to recognize a concept of "implied

---

1. In fact, payment by this insurer is only triggered as to sums the *insured* is "legally obligated to pay"; so unless the doctor is obligated by the PJI award statute, there surely would be no basis for demanding coverage.

coverage" and analyzes the policy on that basis. I concur in the judgment that the policy language here does not provide coverage for PJI. My rationale, however, is that the policy definitions, as outlined by the lead opinion, sufficiently restrict the meaning of the phrase "damages because of a medical incident" so as to preclude coverage for PJI. Given the policy definitions of "medical incident," "damages," "injury," and "professional medical services," a PJI award is not "damages because of a medical incident." Rather, PJI is awarded as additional interest because of a bad faith failure to settle.

**{¶ 33}** On a related point, I also disagree with the lead opinion's discussion of allocating liability for the PJI award between the insurer and insured based on fault. Whether the failure to settle in good faith was the fault of the doctor or the insurance company is only important if the *policy language* turns on fault.[2] Again, the lead opinion seems to commingle the concepts of liability for the PJI award with the contractual right to coverage. The discussion of the relative equities misses the point that the question is one of coverage, and the contract controls.[3] In all events, their discussion should not affect the analysis of this case, given that the policy language cannot be read to cover PJI, regardless of who bears responsibility for the failure to settle.

---

2. *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 167, 25 OBR 207, 209, 495 N.E.2d 918, 921, fn.1, indicated that a defendant's insurer may be liable to the defendant for PJI if the insurer's conduct was the basis for the award. The defendant would proceed, however, through a cause of action based on the insurer's breach of its duty to exercise good faith in defending and settling the claims against the insured. In this case, it is undisputed that the doctor refused to settle and that he wants PICO to pay the PJI award based solely on the terms of the policy.

3. The contract between this insurer and insured permitted a "settlement veto" that could have explicitly excluded coverage for PJI where the insured prevented settlement.