OPINION
Plaintiff-appellant, Kristy Maloney, appeals the decision of the Warren County Court of Common Pleas finding that she is not entitled to declaratory relief in her suit against Motorists Mutual Insurance Company.
Kristy is the granddaughter and ward of Allen and Mildred Simpson. Kristy became the Simpsons' ward when she was thirteen, after she ran away from her father's home in Tennessee. Allen is owner and CEO of Simpson Fence Company. He secured automobile insurance for both his commercial and personal vehicles through a policy with Motorists Mutual. The policy included uninsured motorist coverage which defined "insured" as:
A. You
B. If you are an individual, any "family member".
 C. Any one else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
 D. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
When Kristy turned sixteen, the Simpsons purchased a Ford Escort for her to drive. Kristy promptly wrecked that car. The Simpsons then purchased a Ford Tempo for Kristy which was titled in Mildred's name and covered by the Motorists Mutual policy.
When she was seventeen, Kristy became pregnant and moved out of the Simpsons' home, going to North Carolina. Kristy was allowed to take the Tempo which continued to be covered by the Motorists Mutual policy. On February 13, 1994, Kristy was involved in an accident which rendered the Tempo inoperable and injured two of her passengers. She then borrowed a Ford Mustang from a friend in North Carolina for driving to and from work.
In the meantime, Allen had decided to not replace or repair the Tempo. The Simpsons informed Kristy that they would not repair the Tempo or furnish her with another vehicle. They said that they had no interest in obtaining another means of transportation for Kristy. Kristy said that she did not want them to purchase another vehicle because she wanted to do that herself.
On February 22, 1994, Susanne Binegar, a Motorists Mutual adjuster, had a conversation with the Simpsons in which the Simpsons accepted Motorists Mutual's offer to pay off the loss of the Tempo, with Motorists Mutual keeping the vehicle. Binegar prepared and signed the check and total loss claim form which were mailed to the Simpsons. She also contacted a salvage company which picked up the Tempo that day. On February 28, 1994, Binegar received the total loss claim form signed by Allen. Mildred delivered the check to Ford Motor Credit Company to pay off the remaining loan on the Tempo. On February 24, 1994, the policy change form deleting the Tempo from the Motorists Mutual policy was time stamped for processing by Motorists Mutual.
On February 25, 1994, Kristy was involved in an accident in the Mustang. She was injured and incurred medical expenses of over $20,000. An underinsured driver caused the accident. After this accident, the Simpsons' insurance agent explained in a telephone conversation with Kristy that Kristy would be covered by the Motorists Mutual policy if she was driving a vehicle owned by the Simpsons and with their permission.
Kristy filed the instant complaint against Motorists Mutual, seeking insurance proceeds. Kristy alleged that she was entitled to uninsured motorist coverage under the Motorists Mutual policy because she was driving a "temporary substitute" vehicle when involved in the February 25, 1994 accident. Kristy and Motorists Mutual both filed motions for summary judgment which the trial court denied.
A bench trial was held, after which the court rendered its decision denying Kristy's request for a declaratory judgment, finding that Kristy was not an "insured" under the Motorists Mutual policy. The trial court found that Allen, as the policyholder, had communicated to both Kristy and Motorists Mutual that he would not replace or repair the Tempo. The trial court also found that Allen had initiated a claim with Motorists Mutual for the total loss of the Tempo before the February 25, 1994 accident. The trial court concluded that the Mustang could not be deemed a temporary substitute for the Tempo. Kristy appeals raising a single assignment of error:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT APPELLANT WAS NOT AN INSURED UNDER APPELLEE'S POLICY OF AUTOMOBILE INSURANCE AT ISSUE HEREIN.
In her sole assignment of error, Kristy contends that the trial court erred by finding that she was not an insured entitled to uninsured motorist coverage. She asserts that she demonstrated that she used the Mustang as a temporary substitute vehicle.
An insurance contract must be given a fair and reasonable interpretation to cover the risks anticipated by the parties.Dealers Dairy Products Co. v. Royal Ins. Co., Ltd. (1960),170 Ohio St. 336, paragraph one of the syllabus; Western Res.Mut. Cas. Co. v. Eberhart (1991), 81 Ohio App.3d 93, 98, jurisdictional motion overruled, 62 Ohio St.3d 1484. A policy, though, should not be read so as to extend coverage to absurd lengths. Lovewell v. Physicians Ins. Co. of Ohio
(1997), 79 Ohio St.3d 130[79 Ohio St.3d 143], 147;West v. McNamara (1953), 159 Ohio St. 187, 197. A person who is not a party to an insurance contract may not urge an interpretation of the policy in her favor and against the insurer. Cook v. Kozzell (1964), 176 Ohio St. 332, 336;Boxler v. Allstate Ins. Co. (Feb. 27, 1991), Summit App. No. 14752, unreported.
Kristy was not a named insured or family member under the Motorists Mutual policy at the time of the February 25, 1994 accident. Nor was she entitled to recover for injuries to another insured under the policy. Thus, we consider only whether she was covered by use of a "temporary substitute" vehicle. "Temporary substitute" clauses in automobile insurance policies
 afford continuous coverage to an insured while limiting risk to one operating vehicle at a time for a single premium, and, therefore the insured vehicle for which the substitution is made must be withdrawn from use by some overt act which would reasonably preclude the possibility of both vehicles being driven at the same time. If the vehicle is operable, the insured must take some step to preclude its use by another during the substitution period.
The overt act required or the steps taken will vary with each case. While the express or implied authorization by the owneror named insured to make the substitution or the maintaining of possession or control by the named insured of the substitute vehicle could be such an overt act, * * * there could be other overt acts. (Citation omitted and emphasis added.)
Atkinson v. State Farm Mut. Auto. Ins. Co. (1984), 18 Ohio App.3d 59,61-62.
In the instant case, Kristy asserts that because she was using the Mustang as a substitute for the Tempo her accident in the Mustang is covered by the uninsured motorists coverage of Allen's Motorists Mutual policy. Kristy is incorrect.
Kristy was not the owner of the Tempo. Nor was she the named insured of the Motorists Mutual policy. She was given permission to use the Tempo by the Simpsons, its owners and the named insureds of the Motorists Mutual policy. If permission to use the Tempo was revoked by the Simpsons, Kristy would be using the vehicle illegally. At that point, she could not substitute another vehicle for the Tempo and be covered by the Motorists Mutual policy. The decision to temporarily substitute one vehicle for another rests only with the owner/named insured as recognized in the emphasized language above.
When Kristy wrecked the Tempo, the Simpsons told her that they would neither repair the Tempo or find her another vehicle. At that point, the Simpsons revoked their permission for Kristy to use one of their vehicles. They made this intention known to both Kristy and Motorists Mutual. Kristy, as a person not party to the insurance policy, had no ability or authority to override this decision of the Simpsons. When Kristy borrowed the Mustang, she did it on her own outside of the scope of the Motorists Mutual policy. Although the Mustang may have been a substitute vehicle in Kristy's mind, it was not a substitute vehicle under the Motorists Mutual policy. Any other result would result in an absurdity where a person not even party to the insurance policy could dictate the scope of its coverage.
The trial court correctly determined that the Mustang was not a temporary substitute vehicle under the Motorists Mutual policy. Kristy was not entitled to uninsured motorists coverage under the policy. The assignment of error is overruled.
Judgment affirmed.
 __________________________ YOUNG, P.J.
WALSH and VALEN, JJ., concur.