JOURNAL ENTRY AND OPINION
{¶ 1} Erin McNamara appeals from an order of Parma Municipal Court Judge Timothy P. Gilligan that adopted the decision of Small Claims Court Magistrate Edward J. Fink finding her liable to appellee Children's House Early Learning Center Inc. ("Center"), for $1,555.84, the unreimbursed cost of her American Montessori Society ("AMS") certification course. She contends that the original employment contract required the Center to pay for all training expenses related to her employment. We affirm.
 {¶ 2} From the record we glean the following: On July 19, 2002, Ms. McNamara accepted employment as a Montessori teacher with the Center located in Broadview Heights, but she was not a licensed Montessori instructor. The Center's President and owner, J. Kelly Kosminder, offered to pay for her certification through the AMS if she could get her accepted in its program and if Ms. McNamara remained at the Center for at least two years. That same day, Ms. McNamara signed an employment contract which contained the following provision:
"Employee acknowledges, appreciates and understands theinterest of Employer in maintaining the confidentiality ofinformation related to its business, and that Employee willreceive, or has received at Employer's expense, training,materials, advice and assistance from Employer in educatingEmployee in such matters."[1]
 {¶ 3} Ms. Kosmider obtained approval for Ms. McNamara to enter the AMS program and, on July 22, 2002, before Ms. McNamara began work, she signed a second document which stated in its entirety:
"In the event that employment is terminated for any reasonbefore two years, including but not limited to employee voluntaryresignation prior to July 31, 2002,[2] then employee shallreimburse employer per all of employer's out of pocket expensesrelating to training, AMS Certification, or any other program."
 {¶ 4} Ms. McNamara began working for the Center while also attending Montessori training in Columbus. It paid $550 to AMS against the total cost of $3,000 the day after Ms. McNamara began work, paid $1,000 in September, 2002, and also paid Ms. McNamara's expenses in attending the training. Ms. McNamara attended classes until November, 2002, when she quit because of differences with her employer. Her final paycheck was withheld as a credit against the Center's expenses for the AMS program.
 {¶ 5} When Ms. McNamara failed to repay the Center its $1,555.84 out-of-pocket AMS related expenses, it brought this small claims court action. At the trial before the magistrate, both Ms. McNamara and Ms. Kosmider testified that Montessori training was discussed at the initial interview. Ms. McNamara stated that, although she was aware of Ms. Kosmider's desire that she remain with the school for two years, she believed that the Center would pay for her certification in any event. At the time of trial, she was still enrolled in the AMS certification courses, although she had not paid for any.
 {¶ 6} The magistrate's decision awarded $1,555.84 plus 10% interest and costs to the Center. Ms. McNamara filed objections to the decision alleging, among others, that any amendment to the original contract lacked consideration and was unenforceable. Her objections were denied, and she asserts one assignment of error:
"The trial court erred in overruling the objections ofdefendant to the Magistrate's report and in granting judgment infavor of Children's House."
 {¶ 7} Ms. McNamara claims it was error to accept parole evidence to interpret the parties' first contract and concluding that the parties' entered into a second, enforceable contract on July 22, 2002, and, alternatively, by applying the doctrine of quantum meruit to require reimbursement to the Center for her training.
 {¶ 8} Although both parties assert alternating standards of review, the construction of contracts is a matter of law to be resolved by the judge.[3] "Unlike determinations of fact which are given great deference, questions of law are reviewed by this court de novo."[4]
 PAROLE EVIDENCE {¶ 9} The Parole Evidence Rule prohibits the admission of testimony regarding prior or contemporaneous oral agreements which contradict or vary the terms of written agreements.[5] However, where there is ambiguity in a contract, parole evidence may be admitted to explain such ambiguities.[6] The main issue in cases involving the parole evidence rule is whether the parties intended that a written agreement constitute the final and complete expression of the agreement and, if so, the parole evidence rule would apply.[7] There is, however, no indication that the original employment contract was meant to be a final expression of the agreement.
 {¶ 10} Here an ambiguity arose because of the following phrase: ". . . Employee will receive, or has received at Employer's expense, training, . . ." It is clear from the testimony at trial and a second agreement by the parties that they did not intend to be limited by the original agreement, nor did they intend for the paragraph relating to training to refer to any AMS certification training. Ms. McNamara admitted that she freely and voluntarily executed the second document, with the only difference between her testimony and that of Ms. Kosmider's being that she did not recall being told of any potential reimbursement of training expenses. It is unrefuted that Ms. McNamara was not certified as a Montessori instructor, and Ms. Kosmider was not certain she could gain her acceptance into the AMS program. Once Ms. McNamara was accepted, the second document was executed and she began her employment. Moreover, Ms. Kosmider testified that the language in the original contract related to administrative level training, not to any specialized training.
 {¶ 11} That Ms. McNamara signed the second agreement was evidence that payment arrangements for her Montessori certification had been discussed and she had accepted those terms. There was no error in looking to parole evidence to interpret the meaning of the contract.
 CONTRACT MODIFICATION {¶ 12} Ms. McNamara additionally asserts that the July 22, 2002 document is unenforceable because it lacked consideration and, therefore, she is only bound by the terms of the first contract where the Center would assume the expense of her training.
 {¶ 13} A contract must be supported by valid consideration in order to be enforceable.[8] Additionally, an agreement must be mutual and binding upon both parties.[9] Valid consideration may consist of either a detriment to the promisee or a benefit to the promisor.[10]
 {¶ 14} When Ms. McNamara signed the original employment contract she was not a licensed Montessori instructor and required training and certification to comply with the listed job description of "Montessori Instructor." The second document does not purport to change the terms of the original agreement because the disputed paragraph in the first contract appears to relate to training in the area of confidentiality, not AMS certification. The parties negotiated details of employment, but there is no evidence that the July 19th employment contract was intended to be an unambiguous contract. Rather, this was the Center's standard employment form where the employee's name, location, job title, wage rate, and date are filled in. Moreover, Ms. McNamara did not object to the withholding of her final paycheck as payment towards the Montessori-related expenses.
 {¶ 15} The record reflects that Ms. McNamara signed a modification to the original contract that required specific reimbursement should her employment terminate for any reason before two years of service, she began employment with the Center, attended certification training, and failed to object when her wages were applied to the costs of this certification.
 {¶ 16} The Center entered into this employment contract with the intention of employing a Montessori teacher for the benefit of the school. Ms. Kosmider testified that providing AMS certification for an instructor was a new and expensive venture that the Center was willing to undertake in order to offer Montessori instruction for its students, but which was not meant to be included in its boilerplate employment contract. Had Ms. McNamara completed her two-year term, she would have received a $3,000 certification at no cost to her and, admittedly, improved her resume. The second document was supported by sufficient consideration to make its terms enforceable.
 QUANTUM MERUIT {¶ 17} Ms. McNamara finally claims that it was error to find that, absent her agreement to reimburse the Center for the costs of her AMS training, the Center could recover such costs under the theory of quantum meruit.
 {¶ 18} Quantum meruit is awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered.[11] The contract in this case describes McNamara's hourly wage and basic conditions of employment. Although the Center would benefit from having her as a licensed Montessori instructor at the school for two years, she would also benefit by receiving, at no cost, a $3,000 certification that represented 25-33 percent of what she could expect to earn in a given year. The Center expended $1,800 for Ms. McNamara's training and received only four months of service in return, while she, by her own admission, remains enrolled in the certification program to improve her resume. The assignment of error lacks merit.
 {¶ 19} The judgment is affirmed.
Judgment affirmed.
Dyke and Celebrezze Jr., JJ., concur.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of the Parma Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Emphasis added.
[2] We note the typographical error "2002", but note that both parties agree the date should have been 2004.
[3] Lovewell v. Physicians Ins. Co. (1997),79 Ohio St.3d 143, 1997-Ohio-175, 679 N.E.2d 1119.
[4] Lovewell, supra at 144, citing Nationwide Mut. Fire Ins.Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108,652 N.E.2d 684.
[5] Finomore v. Epstein (1984), 18 Ohio App.3d 88,481 N.E.2d 1193.
[6] Tsapos-Goranties Corp. v. Bartz Enter. Inc., (June 11, 1979), Trumbull App. No. 2680, citing 21 Ohio Jurisprudence 2d 610, Evidence, Section 664.
[7] Russel v. Daniels-Head Associates, Inc. (June 30, 1987), Scioto App. No. 1600.
[8] Robey v. Plain City Theatre Co. (1933), 126 Ohio St. 473,186 N.E. 1.
[9] SJA Associates, Inc. v. Gilder (July 11, 2002), Cuyahoga App. No. 80181, 2002-Ohio-3545, citing Fanning v. Ins.Co. (1881), 37 Ohio St. 339 at 343-344.
[10] Ford v. Tandy Transp., Inc. (1993), 86 Ohio App.3d 364,384, 620 N.E.2d 996.
[11] Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 55, 544 N.E.2d 920, 924.