[Cite as *Nationwide Mut. Ins. Co v Pinnacle Baking Co., Inc.*, 2014-Ohio-1257.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Nationwide Mutual Insurance Company, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 13AP-485 |
| v. | : | (C.P.C. No. 11CV-3221) |
| Pinnacle Baking Co., Inc., | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

## D E C I S I O N

### Rendered on March 27, 2014

*Smith, Rolfes & Skavdahl Co., LPA, John A. Fiocca, Jr.* and *William Scott Lavelle*, for appellant.

*Gallagher, Gams, Pryor, Tallan & Littrell, LLP, Belinda S. Barnes* and *M. Jason Founds*, for appellee.

### APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Plaintiff-appellant, Nationwide Mutual Insurance Company ("Nationwide"), appeals from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 56 motion for summary judgment of defendant-appellee, Pinnacle Baking Co., Inc., ("Pinnacle"), and denying Nationwide's motion for summary judgment. Nationwide's sole assignment of error on appeal asserts as follows:

> BASED UPON THE EVIDENCE INTRODUCED BY THE PARTIES IN SUPPORT OF, AND IN OPPOSITION TO, THEIR CROSS-MOTIONS FOR SUMMARY JUDGMENT, THE TRIAL COURT ERRED BY FINDING INSURANCE COVERAGE EXISTED UNDER THE NATIONWIDE BUSINESS POLICY BECAUSE THE LEASED SPACE WAS NOT "VACANT" AS DEFINED BY THE POLICY.

{¶ 2}   Because the evidence demonstrates that the property was vacant when the loss at issue occurred, we reverse.

I.      FACTS & PROCEDURAL HISTORY

{¶ 3}   On March 11, 2011, Nationwide filed a complaint against Pinnacle seeking a declaratory judgment regarding the rights and obligations of the parties under an insurance policy.  Nationwide insured Pinnacle through a Premium Business Owners Policy of Insurance (the "policy").  Pinnacle operated a commercial bakery in a building it leased at 1328 West Broad Street.

{¶ 4}   On November 17, 2010, an unknown individual broke into the West Broad Street building and stole various items, including: a freezer, a refrigerator, cake pans, doughnut screens, a laptop computer, a fryer, a glazing machine, and a commercial wall air conditioning unit.  Keith Hadley, the president of Pinnacle, reported the loss to Nationwide the following day.  Hadley submitted a proof of loss to Nationwide on January 11, 2011, demonstrating that the total value of the stolen items was $103,018.67.

{¶ 5}   Nationwide asserted in the complaint that the policy did not cover the November 17, 2010 loss, as the property was vacant under the terms of the policy when the loss occurred.  Pinnacle filed an answer to the complaint on April 13, 2011.

{¶ 6}   On August 25, 2011, Pinnacle filed a Civ.R. 56(C) motion for summary judgment.  Pinnacle supported its motion with the affidavit of Hadley.  Hadley averred that Pinnacle "maintained sufficient equipment to conduct its customary business operations at the property," and incorporated by reference a list of items maintained at the bakery.[1]  (First Hadley Affidavit, 6.)  Pinnacle asserted that the vacancy exclusion in the policy was inapplicable, as Pinnacle kept all of the equipment necessary for a commercial bakery in the building, and "would have been baking again immediately with a quick trip to Kroger for eggs, flour and oil."  (Pinnacle Motion for Summary Judgment, 8.)

---

[1] The items maintained at the bakery included refrigerators, tables, cabinets, freezers, wire racks, steel cooling rack carts, ovens, mixers with various attachments, scales, weights, measures, a cake toppers case, a coffee supplies cabinet, a fax machine, a printer, security camera system, a cash register, a bread slicing machine, a Dutchess dough divider machine, a doughnut fryer, a glazing machine, and a gas stove. (First Hadley Depo., exhibit No. 1.)

{¶ 7} Nationwide filed a combined motion for summary judgment and memorandum in opposition to Pinnacle's motion for summary judgment on October 31, 2011. Nationwide noted that, while Pinnacle had some business personal property in the form of appliances and equipment in its building, it did not possess the raw materials which were necessary to produce baked goods. Nationwide supported its motion for summary judgment with the deposition of Hadley. In the deposition, Hadley explained that, when the bakery was operating, 10 percent of the business was retail and 90 percent of the business was wholesale. Hadley admitted that Pinnacle had not sold any baked goods since May 2008, when Pinnacle ceased all business operations. Hadley explained that he stopped the business in May 2008, "after we stopped production," and that he placed the business for sale at that time. (Hadley Depo., 29.) Nationwide asserted in its combined motion and memo contra that, "[s]ince raw materials and stock are considered 'business personal property' under the Policy, logic dictates [Pinnacle] was not conducting 'customary business operations' from May 2008, until November 17, 2010, regardless of the number of ovens or other appliances which may still have been physically located at the site." (Nationwide Motion for Summary Judgment and Memo Contra, 9.)

{¶ 8} Pinnacle filed a combined reply to Nationwide's memorandum contra and a memorandum contra Nationwide's motion for summary judgment on November 28, 2011. Nationwide filed its reply in support of its motion for summary judgment on December 6, 2011, asserting that, as Pinnacle had no stock or raw materials at the bakery which would have allowed Pinnacle to engage in customary baking operations, the bakery was vacant under the terms of the policy when the loss occurred.

{¶ 9} The trial court issued a decision and entry on May 13, 2013, denying Nationwide's motion for summary judgment and granting Pinnacle's motion for summary judgment. The court noted that, pursuant to the Civ.R. 56(C) evidence, it was apparent that the building contained the "personal property necessary to operate a commercial bakery, including ovens, stoves, freezers, refrigerators," etc., but that it "did not contain raw ingredients such as 'flour, sugar, yeast, salt, eggs, butter and milk.' " (Decision and Entry, 6.) The court noted that Section (E)(8)(a)(1)(a) of the policy defined a tenant's building as vacant, and excluded coverage for loss resulting from

theft, when the building did not contain enough personal property to conduct customary operations. The court stated that "[w]hile defendant did not have *every* item of personal property in the building to conduct customary operations, the policy contains no such requirement * * *. Defendant had *enough* personal property in the building to conduct customary business operations at any time." (Emphasis sic.) (Decision and Entry, 7.) Accordingly, the court determined that the building was not vacant under Section (E)(8)(a)(1)(a) of the policy.

## II. PROPERTY WAS VACANT UNDER THE POLICY

{¶ 10} Nationwide asserts on appeal that the trial court erred in finding that the subject property was not vacant. Nationwide asserts that the building did not contain enough business personal property to engage in customary operations, that the vacancy exclusion to coverage applies, and that Pinnacle was thus not entitled to coverage under the policy.

{¶ 11} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). We must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 12} Summary judgment is proper only when the party moving for summary judgment demonstrates that: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 13} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that

demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). A moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id.* If the moving party meets this initial burden, then the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

{¶ 14} An insurance policy is a contract whose interpretation is a matter of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. *See also Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992) (noting that "insurance contracts must be construed in accordance with the same rules as other written contracts"). Contract terms are to be given their plain and ordinary meaning. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-68 (1982). If provisions in an insurance contract are susceptible of more than one interpretation, they "will be construed strictly against the insurer and liberally in favor of insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus. *See also Butche v. Ohio Cas. Ins. Co.*, 174 Ohio St. 144, 146 (1962) (noting that "[p]olicies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably for the insured"). However, when the language used is clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning. *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St.3d 604, 607 (1999).

{¶ 15} "[A]n exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.) *Hybud Equip. Corp.* at 665. A policy is not to be read as to extend coverage to absurd lengths or to be inconsistent with logic or the law. *Lovewell v. Physicians Ins. Co. of Ohio*, 79 Ohio St.3d 143, 148 (1997). To defeat coverage, an insurer must establish that its interpretation is the only interpretation that can be placed on the policy language, not merely that the

policy is capable of the interpretation that it favors. *Erie Ins. Exchange v. Colony Dev. Corp.*, 10th Dist. No. 02AP-1087, 2003-Ohio-7232, ¶ 37. *See also Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 12.

{¶ 16} The facts underlying the instant action are not in dispute. Rather, the sole dispute between the parties is what is required to satisfy the phrase "enough business personal property," as that phrase is used in Section (E)(8)(a)(1)(a) of the policy.

{¶ 17} The policy provides that Nationwide will pay for direct physical loss or damage to covered property located at the insured premises. The policy defines covered property to mean "Buildings and Business Personal Property." (Policy Section (A)(1).) The vacancy exclusion in the policy provides that, where the "building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs" Nationwide will not pay for loss or damage resulting from vandalism, sprinkler leakage, building glass breakage, water damage, or theft. (Policy Section (E)(8)(b).) The policy provides that, "[w]hen this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations." (Policy Section (E)(8)(a)(1)(a).)

{¶ 18} The policy states that business personal property located in the building "consists of the following: (1) Personal property you own that is used in your business, including but not limited to furniture, fixtures, machinery, equipment, and 'stock.' " (Policy Section (A)(1)(b)(1).) The policy defines "stock" to mean "merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping." (Policy Section (H)(17).) The policy defines "operations" to mean "your business activities occurring at the described premises." (Policy Section (H)(10).) The phrase "enough business personal property" is not specifically defined in the policy. The word "enough" has the following dictionary definition: "occurring in such quantity, quality, or scope as to fully satisfy demands or needs." *Webster's Ninth New Collegiate Dictionary*, 414 (1987). Based on these definitions, we hold that for a building occupied by a tenant to be vacant under the

policy, it must not contain a sufficient quantity of fixtures, machines, equipment, and stock for the business to conduct customary business activities.

{¶ 19} Based on the evidence in the record, we are constrained to find that the building was vacant within the terms of the policy. Pinnacle was a tenant in the West Broad Street building, and the tenant vacancy provision in Section (E)(8)(a)(1)(a) was thus applicable to the subject loss. Although the building contained all the fixtures, machines, and equipment necessary to perform the customary business activities of a commercial bakery, the building did not contain any of the raw materials or finished products which are necessary for customary bakery operations.

{¶ 20} Pinnacle asserted in its combined reply and memo contra that it did have stock in the building, as it "maintained non-perishable food supplies, such as bakers chocolate, flavorings, oils, cake decorating supplies, etc. (See Interrogatory responses attached as Ex. C to Deposition of Keith Hadley)." (Pinnacle's Combined Reply and Memo Contra, 4-5.) In the interrogatory responses, Pinnacle admitted that it did not purchase baking supplies from September 18, 2010 through November 17, 2010, but asserted that it had stock on the premises in the form of baker's chocolate, flavorings, oils, and cake decorating supplies. In a statement to a Nationwide claim adjuster one month after the loss, Hadley stated that the bakery produced "doughnuts, pastries, [and] cakes." (Hadley Depo., Exhibit D, 8.) It is impossible to make a doughnut, a pastry, or a cake, with only baker's chocolate, flavorings, oils, and cake decorating supplies. In his deposition, Hadley indicated that he did not have perishable items, such as flour, eggs, butter, or cream, at the West Broad Street location after the business closed in May 2008.

{¶ 21} Moreover, Pinnacle acknowledged in its motion for summary judgment that it did not have sufficient raw materials on site for it to conduct customary operations. Pinnacle expressly stated in its motion that it "would have been baking again immediately with a quick trip to Kroger's for eggs, flour, and oil." (Pinnacle's Motion for Summary Judgment, 8.) Pinnacle thus did not have enough eggs, flour, or oil on site to conduct its customary operations, as a trip to Kroger's for such raw materials would be necessary before Pinnacle could produce baked goods.

{¶ 22} Although Pinnacle had the machines and equipment necessary to operate a commercial bakery, under the policy having enough machines and equipment to conduct customary operations was insufficient to remove the business from the vacancy exclusion. Rather, to not be considered vacant under the policy, Pinnacle had to have enough business personal property to conduct customary operations. As the definition of business personal property in the policy includes finished products and raw materials, we are constrained to conclude that Pinnacle did not have enough business personal property to conduct customary operations. The evidence demonstrated that Pinnacle did not have enough raw materials on site for it to produce any baked goods. As such, Pinnacle's building was vacant pursuant to Section (E)(8)(a)(1)(a) of the policy when the loss occurred. The trial court, in its decision and entry, never considered the definition of business personal property contained within the policy.

{¶ 23} Based on the foregoing, Nationwide's sole assignment of error is sustained.

## III.   DISPOSITION

{¶ 24} Having sustained Nationwide's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand the case for proceedings consistent with this decision.

*Judgment reversed; case remanded.*

BROWN and KLATT, JJ., concur.

_____