OPINION
Plaintiffs-appellants, John Ryan and his wife, Pearl Ryan (the "Ryans"), appeal a decision of the Butler County Court of Common Pleas granting summary judgment in a declaratory judgment action for underinsured motorist coverage in favor of defendant-appellee, The Hartford Company ("Hartford"). We affirm the decision of the trial court.
On July 18, 1998, the Ryans were passengers in a motor vehicle driven by their son, Patrick Ryan. John sustained physical injuries when another motor vehicle driven by Jarrod Bonar failed to yield at a stop sign and collided with Patrick's vehicle. Bonar was insured by Nationwide Mutual Insurance Company ("Nationwide") with underinsured motorist coverage limits of $100,000 per person and $200,000 per accident.
At the time of the accident, Patrick was insured under a policy initially issued by State Farm Insurance Companies ("State Farm") on November 4, 1994 for $50,000 per person and $100,000 per accident. The Ryans were insured under a policy with Hartford through the American Association of Retired Persons ("AARP"). The policy was initially issued on August 20, 1987 for a one-year period with underinsured motorist coverage limits of $50,000 per person and $100,000 per accident.
The Ryans renewed the policy at yearly intervals. In each renewal policy, a continuation page made it clear that the policy continued with a specific policy jacket form and endorsements listed on that page. It also noted any additions/deletions of endorsements and a notation that the policy period begins at 12:01 A.M. standard time at the address of the named insured shown for one year beginning and ending on August 20.
Underinsured motorist coverage was increased to $100,000 per person and $300,000 per accident effective August 20, 1990. Other changes were made to the uninsured/underinsured motorist coverage by the addition or deletion of endorsements or the issuance of a new policy form during subsequent renewals of the policy. At all times, the policy was identified by the same policy number and contained an endorsement entitled Lifetime Continuation Agreement ("Agreement") in which Hartford promised to renew the policy as long as the Ryans met certain requirements.
Nationwide paid the Ryans $100,000, the limit of its liability. Because they suffered damages in excess of $100,000, the Ryans sought underinsured motorist benefits under the Hartford and State Farm policies. Hartford and State Farm denied coverage. Thereafter, the Ryans filed a declaratory judgment action against Hartford and State Farm seeking underinsured motorist benefits.
On August 20, 1987, the date of the initial insurance contract with Hartford, the former version of R.C. 3937.18(A)(2) stated that the "limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." In 1993, the Supreme Court of Ohio changed its previous interpretation of the statute and held that "[a]n underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers." Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, paragraph three of the syllabus. The effect of Savoie was to allow individuals to collect underinsured motorist benefits up to their policy limits for damages in excess of payments made by a tortfeasor.
In response to Savoie, the Ohio General Assembly enacted Am.Sub.S.B. No. 20 ("S.B. 20"), which amended R.C. 3937.18[1] effective October 20, 1994. See Section 7 of Am.Sub.S.B. No. 20 (145 Ohio Laws, Part I, 238). Under the amended statute, R.C. 3937.18(A)(2) states in part:
 Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
Hartford and State Farm moved separately for summary judgment, asserting that R.C. 3937.18(A)(2) as amended applied to their policies at the time of the accident. The Ryans opposed State Farm's motion, asserting that S.B. 20 was unconstitutional. By its April 5, 2000 decision and entry, the trial court granted summary judgment in favor of State Farm.
In response to Hartford's motion, the Ryans maintained that the initial policy issued in 1987 governed their claims because the Agreement guaranteed the policy would continue in force for life, and that the former version of R.C. 3937.18(A)(2), as interpreted by Savoie, applied. By its October 5, 2000 decision and entry, the trial court granted Hartford's motion for summary judgment. The Ryans appeal, raising the following assignment of error:
 THE COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE HARTFORD COMPANY.
In their assignment of error, the Ryans present three issues for our review. In their first and second issues for review, the Ryans contend that the trial court should have applied the law in effect when their policy was first issued in August 1987.
Summary judgment is appropriate if the trial court, upon viewing the evidence in the light most favorable to the party against whom the motion is made, determines that (1) there are no genuine issues as to any material facts; (2) the movant is entitled to a judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. This court reviews a trial court's decision to grant summary judgment de novo. Jones v. Shelly Co. (1995),106 Ohio App.3d 440, 445.
In Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, the Supreme Court of Ohio held that "for the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into the contract for automobile insurance controls the rights and duties of the parties." Id. at syllabus. The court further concluded that the only instances in which S.B. 20 "could [be] incorporated into an insurance policy without impairing the obligation of contract would [be] if a new contract of insurance had been entered into, or a renewal of the existing policy (representing a new contract of insurance) had occurred." Id. at 289.
Subsequently, the Supreme Court of Ohio decided Wolfe v. Wolfe (2000),88 Ohio St.3d 246, wherein the court interpreted R.C. 3937.31(A)[2] and held that:
 every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39. * * * [T]he commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy. * * * Finally, the guarantee period mandated by R.C. 3937.31(A) is not limited solely to the first two years following the initial institution of coverage.
Id. at 250.
During the pendency of this appeal, the Supreme Court of Ohio in Clarkv. Scarpelli (2001), 91 Ohio St.3d 271, construed R.C. 3937.18(A)(2) as amended by S.B. 20 and held that "[f]or the purpose of setoff, the `amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." Id. at syllabus. The court further emphasized that underinsured motorist coverage was not intended to be excess insurance to the tortfeasor's liability coverage and that a person injured by an underinsured motorist should never be afforded greater coverage than that which would be available had the tortfeasor been uninsured. Id. at 276.
In the present case, the trial court relied upon the Supreme Court of Ohio's decisions in Ross and Wolfe. Applying successive two-year periods since August 20, 1987, the trial court found that the August 20, 1997 renewal of the policy constituted a new contract and, therefore, R.C.3937.18(A)(2) as amended by S.B. 20 applied. The trial court rejected the Ryans' argument that the Agreement guaranteed the policy would continue in force under the law in effect in 1987. The trial court found that the Agreement did not affect the other terms and conditions of the policy.
The Ryans contend that the trial court misapplied Wolfe by finding that the policy was renewed every two years. Specifically, the Ryans argue that the Agreement guaranteed the law in effect in 1987 would apply to additional policy periods for as long as they wished. The Agreement states:
 After this policy is in effect sixty (60) days or if this is a renewal or continuation policy, if you are age 50 or over, we will continue the policy for as many additional policy periods as you wish, provided:
1. You pay the premium when due.
 2. Your license or the license of any customary operator of your covered auto has not been suspended or revoked.
 3. You furnish, within forty-five (45) days of our request, acceptable certification by a licensed physician that you or any driver who customarily operates your covered auto are physically and mentally capable of safely operating an automobile.
 4. You or any customary operator of the covered auto are not convicted of driving while under the influence of alcohol.
 Nothing in this endorsement shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements or declarations of the policy, other than as herein stated.
According to the Ryans, the Agreement must be construed in their favor, and taken together with the fact that the policy number remained the same, the Agreement guarantees that a claim for underinsured motorist benefits will be governed by the law in effect in 1987. Hartford responds that the Agreement does not guarantee a continuation of the exact policy language or conditions. In oral arguments, Hartford maintained that the Agreement guaranteed renewal of the policy. Hartford further argued that the policy must comply with statutory law, and that the policy number is merely used as a record-keeping device identifying the insured and the type of policy issued. Neither party has directed this court to any authority interpreting similar policy provisions.
It is well-settled that the interpretation of an insurance contract involves a question of law. Leber v. Smith (1994), 70 Ohio St.3d 548,553. "The fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect."Burris v. Grange Mut. Cos. (1989), 46 Ohio St.3d 84, 89. "The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." Id., quoting Karabin v. State Auto. Mut. Ins. Co. (1984), 10 Ohio St.3d 163,167.
When the language used is clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning. Cincinnati Indemn. Co. v. Martin (1999),85 Ohio St.3d 604, 607. A policy should not be read so as to extend coverage to absurd lengths or to be inconsistent with logic or the law.Lovewell v. Physicians Ins. Co. of Ohio (1997), 79 Ohio St.3d 143, 148;West v. McNamara (1953), 159 Ohio St. 187, 197. Moreover, provisions in an automobile liability insurance policy that vary from statutory requirements are unenforceable. Ross, 82 Ohio St.3d at 287.
Here, the plain and ordinary meaning of the words do not purport expressly, or by implication, to guarantee that the original policy terms and conditions would continue in force under the existing law in 1987. Rather, the Agreement was a promise that the policy would only be cancelled when the Ryans failed to meet certain requirements. The Agreement did not change the other terms and conditions of the policy that provided Hartford could make changes by endorsements to the policy, and that the policy shall comply with the law to the extent required. The language contained in other provisions of the policy provides for termination at the end of each policy period, indicting the parties intended a new contract upon renewal, as opposed to any language in the Agreement indicating that the policy "continues in force." See Francisv. McClandish, 1999 Ohio App. WL 266680, at *8 (Apr. 19, 1999), Athens App. No. 98CA21, unreported, citing Couch on Insurance 3d, Section 29:33. Our view is further supported by other documents received by the Ryans wherein Hartford referred to the Agreement as "[a] unique feature of your AARP policy, your coverage never will be cancelled as long as you meet a few requirements."
We therefore find that the Agreement did not create a lifetime guarantee where the law in effect in 1987 would apply to subsequent renewals of the policy.
The Ryans further argue that Wolfe did not change the law that the renewal of a policy is considered to be the identical policy absent notice of the changes of its terms or conditions. According to the Ryans, they never negotiated any changes or received notice of any changes in the policy. However, at oral argument, the Ryans conceded that Hartford informed them of the changes in 1995 when they received an endorsement containing the Savoie language. The Ryans apparently acknowledge this change in an attempt to imply that Savoie should govern their claim because they never received notice of the reduction in underinsured motorist coverage by R.C. 3937.18(A)(2) as amended by S.B. 20 with their 1997 policy.
An exception to the general rule that the renewal contract is the same as the original contract exists when a statute or amendment to a statute is enacted prior to the renewal and the renewal policy represents a new contract. Ross, 82 Ohio St.3d at 289. An insurer has no duty to inform an insured about changes in insurance laws. See Walter v. Allstate Ins.Co., 1997 Ohio App. WL 219229, at *2 (Apr. 10, 1997), Richland App. No. 96-CA-84, unreported, appeal not allowed, 79 Ohio St.3d 1491 (noting that insurance law is typically in a state of flux). See, also, 2 Couch on Insurance 3d 109 (Supp. 2000), Section 29:43.
Because parties may not enter a contract contrary to law, it was necessary for Hartford to negotiate statutory changes in the law when the renewal policy represents a new contract. The 1995 endorsement containingSavoie language was void as a matter of law since the provisions were inconsistent with the statutory law at the time. See Ross,82 Ohio St.3d at 287.
Contrary to their argument, the Ryans had knowledge one year prior to the August 20, 1997 renewal that the provisions and coverages of their policy had changed. Hartford issued the Ryans a new policy booklet in August 1996. In the cover letter showing their coverage for the upcoming policy period beginning August 20, 1996, Hartford stated:
 With this mailing, you will notice a new green booklet. This policy booklet now describes the provisions and coverage of your policy. In previous mailings, this material was included on the letter sized-sheets after your Declarations Page. * * * You should review this document carefully to be sure you have the coverages you want. * * *.
We therefore conclude that the trial court properly found that the August 20, 1997 renewal constituted a new contract and that R.C. 3937.18
as amended by S.B. 20 applied. As such, the Ryans were not entitled to underinsured motorist benefits under the Hartford policy. Accordingly, the first and second issues for review are not well-taken.
In their final issue for review, the Ryans contend that they are entitled to multiple coverages because they paid uninsured motorist coverage on multiple vehicles under the Hartford policy even after the Supreme Court of Ohio in Martin v. Midwestern Group Ins. Co. (1994),70 Ohio St.3d 478, found such provisions unnecessary. According to the Ryans, coverage can be stacked since they purchased uninsured motorist coverage "on a number of vehicles" and Hartford never informed them of the change in the law. In response, Hartford maintains that it can charge the Ryans additional premiums due to the increased risks associated with multiple vehicles.
Neither party cites to the portion of the record where the alleged error may be found. See App.R. 12(A)(2) and 16(A)(7). Our review of the record reveals that the Ryans in their memoranda opposing summary judgment relied on copies of their policies to support their contention. These policies show that the Ryans insured a 1983 Oldsmobile until November 1991. At that time, the policy was amended to replace the 1983 Oldsmobile with a 1992 Oldsmobile with the uninsured/underinsured motorist coverage premium remaining unchanged. There is no evidence that the Ryans insured multiple vehicles during any policy period and/or paid additional premiums for uninsured motorist coverage.
As the Ryans have not produced any evidence on this issue as specified in Civ.R. 56(C), there can be no genuine issue of fact remaining for trial. See Harless, 54 Ohio St.2d at 66. Furthermore, the court inMartin noted that "[i]t is state law (R.C. 3937.18) which determines the scope of uninsured motorist coverage, not the insurance policy or the amount of premium paid." Martin, 70 Ohio St.3d at 482. See, also, Ross, 82 Ohio St.3d at syllabus. Accordingly, the Ryans' third issue for review it not well-taken.
In light of the foregoing, we conclude that there was no genuine issue of material fact to be decided in this case and the trial court properly granted summary judgment to Hartford. The assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and POWELL, J., concur.
[1] We note that the Ohio General Assembly amended R.C. 3937.18 several times after October 1994 by H.B. No. 261, effective September 3, 1997, S.B. 57 effective November 2, 1999, and S.B. 267, effective September 21, 2000. R.C. 3937.18 in this opinion refers to the amended version enacted as part of S.B. 20 effective October 20, 1994 or the statute prior to the enactment of S.B. 20.
[2] R.C. 3937.31(A) states: "Every automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years. Where renewal is mandatory, `cancellation,' as used in sections3937.30 to 3937.39 of the Revised Code, includes refusal to renew a policy with at least the coverages, included insureds, and policy limits provided at the end of the next preceding policy period. No insurer may cancel any such policy except pursuant to the terms of the policy, and in accordance with sections 3937.30 to 3937.39 of the Revised Code * * *."