JOURNAL ENTRY and OPINION
{¶ 1} In this consolidated appeal, defendant-appellant Michael Hexter appeals from the trial court's order entering summary judgment in favor of third-party defendants-appellees Steven Brenner and William Akers and for denying his motion for summary judgment. Plaintiff-appellee Brian VanAtta also appeals and argues the trial court erred by denying his motion for prejudgment interest.
 {¶ 2} Hexter assigns the following errors for our review in Appeal No. 82361:
 {¶ 3} "I. The trial court erred in granting summary judgment in favor of defendant William Akers as he knew of a possible defect and failed to disclose it to Mr. VanAtta prior to exercising his power as joint owner of the deck structure to permit Mr. VanAtta to enter thereon."
 {¶ 4} "II. The trial court erred in granting summary judgment in favor of Steven Brenner as the owner of the property who had a duty to warn Mr. VanAtta about a condition of which he should have known and to provide Mr. VanAtta with a safe workplace."
 {¶ 5} "III. The trial court erred in failing to grant summary judgment in favor of the prior premises owner Michael Hexter and improperly instructed the jury as to the applicable law of premises liability as Mr. Hexter was not a contractor and did not have care and control of the property upon which this accident occurred and therefore owed no duty to plaintiff."
 {¶ 6} "IV. The trial court erred when it granted plaintiff's motion in limine thus excluding the testimony of any witnesses concerning the issue of erosion and its impact upon the structure of the deck." VanAtta assigns the following error for our review in Appeal No. 82422:
 {¶ 7} "I. The trial court erred in overruling plaintiff-appellant's motion for prejudgment interest without explanation and without a hearing."
 {¶ 8} Having reviewed the record and pertinent law, we affirm the trial court's judgment in Appeal No. 82361. In Appeal No. 82422, we reverse and remand to the trial court for a hearing on the issue of prejudgment interest. The apposite facts follow.
 {¶ 9} On July 27, 2000, VanAtta filed the within action against William Akers, Steven Brenner and Michael Hexter. VanAtta seeks compensation for injuries he sustained as a result of the alleged negligence of the defendants in the construction and maintenance of a deck structure located on the joint properties of Brenner and Akers.
 {¶ 10} VanAtta voluntarily dismissed his claims against Akers and Brenner, but maintained his negligent construction claim against Hexter. Hexter, thereafter, filed a third-party complaint against both Akers and Brenner, seeking contribution as joint tortfeasors. In response, Akers and Brenner filed motions for summary judgment arguing they did not construct the deck and had no notice the stairs were in a dangerous condition. Hexter also filed a motion for summary judgment arguing he was not liable because he did not own or control the property at the time of the accident.
 {¶ 11} The deposition testimony attached to the motions for summary judgment indicated that in 1987 Hexter purchased, at a sheriff's sale, two lakefront properties located on Lake Road in Bay Village, Ohio. Hexter built houses on both lots and lived in one.
 {¶ 12} Sometime between the years 1993 and 1995, Hexter and his son built steps and platforms leading down to the beach. The project included approximately fifty stairs leading from the property to a platform. This first set of stairs and platform bisected the property line of the two parcels. Hexter testified he constructed the structure on both parcels so that future property owners would both have access to the beach.
 {¶ 13} According to Hexter, from the first platform were stairs leading to a sun deck on the east side of the property. Brenner and VanAtta, however, testified there were two steps leading down to a walkway, which led to the sun deck. These stairs/platform and sun deck were exclusively on Brenner's property. From the sun deck were more stairs leading to the beach.
 {¶ 14} Hexter admitted he never obtained a permit to construct the steps and platforms. He did not refer to the Bay Village building code requirements, because he was informed by the Bay Village Building Department the land on which he wished to build was the property of the State; therefore, he believed a permit was not necessary. The property owners in fact had a lease with the State for the property extending from the edge of the cliff to the lake.
 {¶ 15} In October 1997, Hexter sold the home he was not living in to Steven Brenner. In September 1998, he sold the other home to William Akers, who had been leasing the home since March of 1998.
 {¶ 16} The new owners agreed that erosion control in the area of the cliff on which the steps and platform were located was needed. In fact, Hexter informed Akers it was needed and issued a check to Akers to aid in the erosion control as part of the purchase agreement. In May or June 1998, Brenner contacted West Shore Inland Marine Company (West Shore), which was in the business of preventing erosion on the shores of Lake Erie.
 {¶ 17} At the time, Brian VanAtta held a non-paying position as a client liaison for West Shore. VanAtta's duties consisted of visiting the properties in need of preventative care to review the site, take measurements and make a recommendation to West Shore so that it could develop a quote for the job. Although VanAtta did not receive payment as compensation, he hoped to have a future business interest in West Shore if enough business was generated on the west side of Cleveland
 {¶ 18} After receiving the call from Brenner, West Shore requested that VanAtta call upon Brenner and Akers to discuss preventative erosion measures that were needed. VanAtta estimated he visited the property of Brenner and Akers about six times beginning in 1998. Brenner and Akers eventually signed a contract with West Shore to implement erosion control measures.
 {¶ 19} According to VanAtta, on March 27, 1999, he was at the property of Akers and Brenner because Akers requested that VanAtta come to the property in order to discuss the progress of the project.
 {¶ 20} VanAtta attempted to view the property prior to speaking with Akers. He therefore arrived on the property fifteen minutes prior to the meeting. He walked down the steps to the first platform and tested the steps connecting the first platform to the walkway, by pressing down with his foot three or four times. When he put his full weight on the stairs, they collapsed. VanAtta fell onto large boulders about fifteen feet below where the stairs had been. He sustained a serious injury to his left hand When questioned why he tested the stairs prior to stepping on them, he explained it was prudent to do so on wooden structures facing the lake.
 {¶ 21} According to VanAtta, the eastern sun deck was obviously in bad condition because it was leaning toward the lake. He stated the walkway and stairs leading to the sun deck, however, showed no signs of disrepair. He previously walked in the area that collapsed in the fall of 1998 and did not notice anything unusual regarding that area. Brenner had previously warned him to be careful on the eastern sun deck, but said nothing about the stairs or walkway.
 {¶ 22} Brenner testified he never spoke with VanAtta about the condition of the steps or walkway. He said it was obviously apparent the east sun deck was sagging towards the lake, but the stairs and walkway leading to the sun deck were not sagging. Brenner stated he was not aware the area of the accident was not secure. He had only traversed that area a few times.
 {¶ 23} Akers testified he had never traversed the area of the accident because it was not on his property. He did notice that prior to the accident there was a quarter-inch gap between the stairs and the first platform.
 {¶ 24} VanAtta hired Richard Kraly, an expert architect, to determine whether Hexter was negligent in constructing the steps, because he believed that the stairs, which were only four-years old, should not have collapsed.
 {¶ 25} Kraly opined Hexter and his son were negligent in constructing the steps by failing to properly secure the stairs. The steps were held together only with nails. According to Kraly, Hexter violated the building code and industry standards by failing to use any vertical support beams, bolts, angle irons or ledger boards to secure the steps as required by the building code and industry standards.
 {¶ 26} Kraly also testified that although there was testimony by Hexter that there was a quarter-inch gap between the platform by the stairs, if the steps had been constructed correctly, the gap would not have caused the steps to collapse. According to Kraly, wood naturally shrinks and this quarter-inch gap was probably caused by natural wood shrinkage. He also stated that erosion was not the cause of the collapse of the stairs/platform. According to Kraly, the sole cause of the collapse was the negligent construction methods employed by Hexter.
 {¶ 27} The trial court granted summary judgment in favor of Brenner and Akers and denied Hexter's motion for summary judgment.
 {¶ 28} The case then proceeded to trial on December 17, 2002 against Hexter on the sole issue of whether the stairs were negligently constructed. Kraly, Hexter, and VanAtta all gave essentially the same testimony they gave in their depositions. VanAtta's physician also testified to VanAtta's injuries. The jury awarded VanAtta $55,000 in damages.
 {¶ 29} Subsequent to the trial, VanAtta motioned for prejudgment interest for Hexter's failure to make a good faith effort to settle. The matter was briefed and the trial court denied the motion without a hearing.
 {¶ 30} In his first and second assigned errors, Hexter argues the trial court erred by granting summary judgment in favor of Akers and Brenner. He contends they are liable for VanAtta's injuries because they were in control of and owned the property, and breached their duty to provide VanAtta a safe workplace.
 {¶ 31} Although VanAtta had originally sued both Brenner and Akers along with Hexter, he later dismissed them from the complaint. Hexter then filed a third-party complaint against them seeking contribution under the theory they were joint tortfeasors pursuant to former R.C.2307.31.
 {¶ 32} R.C. 2307.31 allows for contribution among joint tortfeasors under certain circumstances. The statute does not define "joint tortfeasor," but the term has been defined elsewhere as, "one who actively participates, cooperates in, requests, aids, encourages, ratifies, or adopts a wrongdoer's actions in pursuance of a common plan or design to commit a tortious act."[1] In the instant case, Brenner and Akers had no involvement with constructing the deck and stairs.
 {¶ 33} Furthermore, "[i]n order to be the proper subject of a third-party action, the alleged right of the defendant to recover, or the duty allegedly breached by the third-party defendant, must arise from the plaintiff's successful prosecution of the main action against defendant."[2] Thus, a third-party complaint cannot be founded on an independent cause of action.[3] In order to be a proper subject of a third-party action, the alleged right of the defendant to recover, or the duty allegedly breached by the third-party defendant, must arise from the plaintiff's successful prosecution of the main action against the defendant.[4] A third-party claim must be derivative of the outcome of the main claim, and the third-party must be "secondarily liable."[5]
 {¶ 34} In this case, Hexter's third-party claim alleged Brenner and Akers were liable to VanAtta, based on premises liability and failure to provide a safe workplace. These are separate, independent claims from VanAtta's negligent construction claim against Hexter. Impleader under Civ.R. 14(A) cannot be used to combine all claims tangentially related to one another.[6]
 {¶ 35} Hexter's first and second assigned errors are overruled.
 {¶ 36} Hexter argues in his third assigned error, the trial court erred by denying his motion for summary judgment. Hexter argues because he did not own or control the property at the time of the accident, he cannot be held liable. Hexter also argues the trial court erred by instructing the jury at trial regarding contractor liability.
 {¶ 37} We consider an appeal from summary judgment under a de novo standard of review.[7] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[8] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion which is adverse to the non-moving party.[9]
 {¶ 38} Moving parties carry an initial burden of setting forth specific facts which demonstrate their entitlement to summary judgment.[10] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will only be appropriate if the non-movant fails to establish the existence of a genuine issue of material fact.[11]
 {¶ 39} The Ohio Supreme Court in Simmers v. Bentley Constr. Co.[12]
held liability based on premises liability is separate and apart from liability arising out of negligent construction. In Simmers, the defendant, Bentley Construction, was an independent contractor responsible for constructing a railroad bridge on the property of CSX. In constructing the bridge, Bentley failed to fill a hole in the walkway along the bridge. Although the hole in the walkway was open and obvious, the Court held "an independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property."[13] The Court went on to explain because Bentley did not possess a property interest in the premises, whether it was liable or not was dependent on the law of negligence.[14]
 {¶ 40} In determining Bentley's duty to the plaintiff, the Court held "[u]nder the law of negligence, a defendant's duty to a plaintiff depends upon the relationship of the parties and the foreseeabilty of injury to someone in the plaintiff's position. Injury is foreseeable if a defendant knew or should have known that its act was likely to result in harm to someone."[15] The Court found that since it was foreseeable someone using the bridge was likely to fall through the hole, the contractor owed a duty of care to the users of the bridge and breached that duty.
 {¶ 41} Although Hexter was the owner of the property at the time he built the structure, we conclude, by embarking on the extensive building project on his own, he put himself in the position of acting as a contractor. In holding this, we do not intend all projects undertaken by a homeowner to subject them to liability as contractors. However, when a project is of a type normally regulated by building codes and requiring a permit, the homeowner subjects himself to liability as a contractor.[16]
 {¶ 42} Because we find Hexter to be a contractor, we apply the general rules of negligence in order to determine Hexter's liability. Under the law of negligence, a defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position.[17] Injury is foreseeable if a defendant knew or should have known that its act was likely to result in harm to someone.[18] Once the existence of a duty is found, a plaintiff must show that the defendant breached its duty of care and that the breach proximately caused the plaintiff's injury.[19]
 {¶ 43} In the instant case, Hexter admitted he was thinking of future property owners when he constructed the structure so that it divided the property line and thereby permitted both future owners access to the beach.[20] Therefore, he foresaw that others besides himself would use the structure. By failing to properly secure the stairs attached to the platform, Hexter negligently constructed the deck and, thus, breached his duty to future users. According to VanAtta's expert, it was this negligence which caused the stairs to collapse.
 {¶ 44} Therefore, based on this evidence, the trial court did not err by denying Hexter's motion for summary judgment. Hexter's third assigned error is overruled.
 {¶ 45} In his fourth assigned error, Hexter argues the trial court erred by excluding the testimony of the lay witnesses regarding their opinion the land under the eastern sun deck was in disrepair due to erosion.
 {¶ 46} We note Hexter never renewed his attempt to have this testimony admitted after the trial court ruled on his motion in limine. A motion in limine is a tentative, preliminary or presumptive ruling, directed to the inherent discretion of the trial judge, about an evidentiary issue that is anticipated, but has not yet been presented in its full context.[21] As such, any claimed error regarding a trial court's decision on a motion in limine must be preserved at trial by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed.[22] The failure to object or proffer the evidence at the trial constitutes a waiver of any challenge, regardless of the disposition made on a preliminary motion in limine.[23]
Therefore, any error regarding the trial court's failure to permit this evidence is waived.
 {¶ 47} Nonetheless, even if the evidence was proffered, the trial court did not err by preventing this testimony from being admitted. VanAtta's expert, Kraly, testified erosion was not the cause of the structure's collapse. In fact, the sun deck was not even at issue because it remained standing after the collapse of the stairs/walkway. Therefore, the lay witnesses' opinions as to the cause of the collapse was not admissible to rebut the expert opinion because more than mere speculation on their part was needed.
 {¶ 48} Hexter's fourth assigned error is overruled.
 {¶ 49} VanAtta, in his sole assigned error in Case No. 82422, argues the trial court erred by denying his motion for prejudgment interest pursuant to R.C. 1343.03(C). He also contends the trial court erred by not first conducting a hearing prior to denying his motion.
 {¶ 50} VanAtta contends he made a settlement offer prior to trial in the amount of $50,000. Hexter's insurance company, Allstate, failed to counter-offer this amount. According to VanAtta, because Hexter had no defense and presented no witnesses to contradict the testimony of VanAtta's expert and treating physician, the failure to make an offer of settlement indicated a lack of good faith.
 {¶ 51} The general rule is that the court must conduct an oral hearing on the motion for prejudgment interest.[24] If the motion for prejudgment interest is obviously not well taken, the court can deny the motion for prejudgment interest without conducting a hearing.[25] The trial court has the discretion to decline to convene a hearing if it appears no award is likely.[26] The record must demonstrate that the motion is obviously not well taken, or this court must remand for a hearing.[27] Further, if the record does not demonstrate that the defendant made any offer, we must remand for a hearing.[28]
 {¶ 52} In the instant case, we conclude, from the evidence in the record, VanAtta's motion for prejudgment interest did not indicate it was obviously not well taken. VanAtta demanded $50,000 to settle the case. Absolutely no counter-offer was made by Allstate to this demand
 {¶ 53} We therefore reverse and remand the trial court's denial of prejudgment interest in order for the trial court to conduct a hearing on the matter.
 {¶ 54} VanAtta's sole assigned error has merit in part.
 {¶ 55} Judgment is affirmed in Appeal No. 82361, and reversed and remanded for a hearing in Appeal No. 82422.
 {¶ 56} This cause is affirmed in part, reversed in part and remanded.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Diane Karpinski, J., concurs; Timothy E. McMonagle, J., concurs in Judgment only.
[1] Clevecon, Inc. v. Northeast Ohio Regional Sewer Dist. (1993),90 Ohio App.3d 215, 223, citing Prosser, Law of Torts (4 Ed. 1978) 292, Section 46.
[2] Renacci v. Martell (1993), 91 Ohio App.3d 217, 221.
[3] State Farm Mut. Ins. Co. v. Charlton (1974), 41 Ohio App.2d 107.
[4] Renacci at 220.
[5] Id.
[6] Renacci at 220.
[7] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[8] Id. at 192, citing Brown v. Sciotio Bd. of Commrs. (1993),87 Ohio App.3d 704.
[9] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[10] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[11] Id. at 293.
[12] (1992), 64 Ohio St.3d 642.
[13] Id. at 645.
[14] Id.
[15] Id.
[16] In so stating, we realize in the instant case because of the unusual circumstance that the deck was located on the State's property and not Bay Village's, the building codes did not apply. However, if this exception did not apply, the Bay Village building code would have clearly applied.
[17] Huston v. Konieczny (1990), 52 Ohio St.3d 214, 217; Commerce Industry Ins. Co. v. Toledo (1989), 45 Ohio St.3d 96, 98; Jeffersv. Olexo (1989), 43 Ohio St.3d 140, 142-143; Menifee v. Ohio WeldingProducts, Inc. (1984), 15 Ohio St.3d 75, 77.
[18] Huston, supra; Commerce Industry, supra.
[19] Mussivand v. David (1989), 45 Ohio St.3d 314, 318; Di Gildo v.Caponi (1969), 18 Ohio St.2d 125.
[20] Hexter Depo. at 29.
[21] State v. Grubb (1986), 28 Ohio St.3d 199, 201.
[22] Id.; Gollihue v. Consolidated Rail Corp. (1997),120 Ohio App.3d 378, 388.
[23] Grubb, 28 Ohio St.3d at 201; Gollihue,120 Ohio App.3d at 388.
[24] See Lovewell v. Physicians Ins. Co. of Ohio (1997),79 Ohio St.3d 143, 147; Kluss v. Alcan Aluminum Corp. (1995),106 Ohio App.3d 528, 541; Andrews v. Riser Foods, Inc. (Oct. 16, 1997), Cuyahoga App. No. 71658.
[25] Fazio v. Meridian Ins. Co. (Apr. 9, 1998), Cuyahoga App. No. 73320.
[26] Werner v. McAbier (Jan. 13, 2000), Cuyahoga App. No. 75197, 75233.
[27] Physicians Diagnostic Imaging v. Grange Ins. Co. (Sep. 24, 1998), Cuyahoga App. No. 73088.
[28] Physicians, supra.