**Brian OVERBEEK, Plaintiff–Appellant,**

v.

**Charles HEIMBECKER, Richard Hellenbrand, and General Casualty Company of Wisconsin, Defendants–Appellees.**

No. 96–1957.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1996.

Decided Dec. 9, 1996.

Thomas A. Lockyear, Bell, Metzner, Gierhart & Moore, Madison, WI, John C. Ambrose, Thomas M. Cushing (argued), Marilyn J. Martin, Ambrose & Cushing , Chicago, IL, for Plaintiff-Appellant.

Harry Sauthoff, Jr., Larowe, Gerlach & Roy, Sauk City, WI, for Charles Heimbecker.

Mark W. Andrews (argued), Winner, Wixson & Pernitz, Madison, WI, for Richard Hellenbrand and General Casualty Company of Wisconsin.

Before POSNER, Chief Judge, and FLAUM and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Thirteen times General Casualty Company offered to settle a personal injury case against one of its insureds for the policy limit of $25,000. General Casualty made the offer before trial. General Casualty made the offer during the trial. General Casualty made the offer after trial. At times, General Casualty even offered double the policy limit to make the litigation go away. Thirteen times the plaintiff's counsel rejected the offers and insisted on a trial and various other proceedings. Now, over 9 years after the trial wrapped up, plaintiff's counsel has knocked on our door, asking for 12 percent interest on not just the $25,000 owed under General Casualty's policy but also on a $2.2 million verdict rendered against its insured. Some might find this argument creative; most would find it frivolous. None would find it persuasive.

The underlying facts of this case are tragic. On June 1, 1985, Richard Hellenbrand tossed his car keys to his buddy, Charles Heimbecker, and the two zoomed off in Hellenbrand's Trans-Am. The pair took the phrase "one for the road" to new depths, bringing a tapped beer keg along for the ride. While driving along Gannon Road in

rural Columbia County, Wisconsin, Heimbecker crossed the centerline and struck 22–year–old Brian Overbeek's motorcycle. The accident left Overbeek quadriplegic.

Overbeek sued Hellenbrand, Heimbecker, and Hellenbrand's automobile insurer, General Casualty, in district court. Unfortunately, on top of being incredibly irresponsible, both men were broke. Added to this mix was the fact that Hellenbrand's policy with General Casualty topped out at only $25,000, a sum not even remotely adequate to compensate Overbeek for his loss. But all things said are not untrue. Realistically here, only $25,000 was available. Rather than accept reality, Overbeek's lawyer rejected General Casualty's repeated offers—including one before the case was even filed—to settle the case for the policy limit. Even offers of double the policy limit wouldn't do. Instead, Overbeek's counsel insisted on presenting the case to the jury. On October 7, 1987, after a 3–day trial, a jury found that Heimbecker was negligent, and because he was acting as Hellenbrand's servant, General Casualty was required to pay on its policy. Two days later the jury fixed compensatory damages against Hellenbrand and Heimbecker at a little over $2.2 million but denied punitive damages. Both during and after the trial, General Casualty's offer to settle for the policy limit was refused.

On October 28, 1987, the district court entered judgment against Hellenbrand and Heimbecker but inadvertently failed to name General Casualty in the judgment. Neither party caught the omission. Then, Overbeek's lawyer, apparently not believing that Hellenbrand and Heimbecker would be just as judgment-proof on an additional award as they were on a $2.2 million judgment, appealed the jury's decision to deny punitive damages. Almost 9 years ago, on December 17, 1987, we noted the apparent absence of a final judgment against General Casualty and asked the parties to brief whether jurisdiction was proper. Subsequently, the case went back to the district court.

In January 1988 Overbeek filed a motion in the district court to amend the judgment to include General Casualty "to the extent of its coverage therein" or "to the extent of its

coverage as the parties may agree or as later may be determined." General Casualty objected to the somewhat wishy-washy language of the proposed amendment and asked the court to enter judgment against it for $25,000. In a hearing on Overbeek's motion in February 1988, the district court stayed entry of judgment against General Casualty at the request of Overbeek's local counsel. That same day, Overbeek's lawyer dashed off a letter, informing the court that the judgment would be inappropriate and he would try pushing his luck without it on appeal. Three and a half years then went by without so much as a peep from Overbeek's lead counsel. In March 1991 Overbeek's lawyer agreed to dismiss his appeals, but he didn't request the entry of judgment. Finally, in late 1995, after unsuccessfully suing General Casualty for $25,000 in Illinois state court, Overbeek's counsel resurfaced in district court, requesting entry of judgment against General Casualty for $50,000 plus over 8 years of prejudgment interest. Overbeek also requested that General Casualty fork over 12 percent interest on the $2.2 million judgment against Heimbecker and Hellenbrand. The district court rejected these arguments, entered judgment against General Casualty in the amount of $25,000, and denied interest and costs. Overbeek appeals.

Overbeek first argues that Wisconsin Statute § 814.04(4) requires General Casualty to shell out 8 years of 12 percent interest on the entire $2.2 million judgment against the insureds. Only two hurdles lie in Overbeek's path: the law and common sense. In *Blank v. USAA Property & Cas. Ins. Co.,* 200 Wis.2d 270, 546 N.W.2d 512 (Ct.App. 1996), a case conveniently ignored by Overbeek, the court rejected a strikingly similar argument, stating: "Section 814.04(4), Stats., does not impose interest on the verdict upon the insurer for sums in excess of policy limits. The statute merely directs the clerk how to compute the interest on the verdict; contrary to plaintiff's contention, whether the insurer and not the insured is to pay this interest depends on the terms of their insurance contract." *Id.* at 281, 546 N.W.2d 512. General Casualty's policy with Hellenbrand notes only that it will pay interest on behalf

of its insured arising *after* the judgment. However, even that obligation ends once the insurance company offers to pay the policy limits—something General Casualty did repeatedly in this case.

▮ As a practical matter, requiring General Casualty to pay interest on the $2.2 million judgment would make no sense. The purpose of postjudgment interest is not to punish a defendant but to encourage prompt payment and compensate a plaintiff for another party's use of its money. *Nelson v. Travelers Ins. Co.,* 102 Wis.2d 159, 169, 306 N.W.2d 71, 76 (1981). First, General Casualty could not have been more prompt in offering the $25,000, for as we noted, it offered to pay before Overbeek even filed suit. Second, General Casualty was never responsible for the $2.2 million; that judgment was only against the insureds. It follows, then, that General Casualty could not have not inequitably retained use of the money and does not owe interest on the entire verdict.

▮ Overbeek next argues that General Casualty is liable for over 8 years of interest on the $25,000 verdict against it. Again, we disagree. Once General Casualty offered the policy limits, it was no longer on the hook for any interest. While Overbeek complains that General Casualty did not formally tender a check to the clerk's office, we are convinced, given the circumstances of this case, that General Casualty had a check at the ready, and its repeated offers were sufficient to toll the accrual of interest. Finally, the lion's share of the blame for the delay in entering judgment against General Casualty rests squarely on the shoulders of Overbeek's counsel. Instead of agreeing that the court should enter judgment against General Casualty for $25,000 in 1988, Overbeek's lawyer tried to wiggle out from under the policy limit by claiming dual coverage. Counsel then disappeared until 1991, when he agreed to withdraw the appeal filed back in 1987. Next, in 1993 he tried to sue General Casualty for $25,000—an amount he wouldn't accept in district court—in Illinois state court. Overbeek's lawyer didn't come up for air again until late 1995, when he asked for $50,000 plus costs and interest. As the district court noted, it would be grossly unfair to make

General Casualty pay interest which accrued solely due to the intransigence of plaintiff's counsel. *See West Virginia v. United States,* 479 U.S. 305, 311 n. 3, 107 S.Ct. 702, 706 n. 3, 93 L.Ed.2d 639 (1987) (noting equitable considerations can bar otherwise valid claims for interest).

▮ Finally, Overbeek claims that the district court abused its discretion in failing to award costs under Rule 54(d)(1). We think the district court's decision falls well short of an abuse of discretion. Rule 54(d)(1) gives a district court discretion to deny costs when exceptional circumstances are present. *Smith v. DeBartoli,* 769 F.2d 451, 453 (7th Cir.1985), *cert. denied,* 475 U.S. 1067, 106 S.Ct. 1380, 89 L.Ed.2d 606 (1986). This case is chock full of exceptional circumstances. Overbeek's counsel inexplicably refused over a dozen offers of the policy limit, needlessly pursued a trial, appealed the jury's decision not to award punitive damages even though the defendants were judgment-proof, vanished for large periods of time, frivolously argued for dual coverage, and even wasted time and resources hauling General Casualty into an Illinois court for no apparent reason. It's sad that only a pittance was available to Overbeek for his terrible injuries, but that fact could not be changed by a decade of protracted and needless litigation.

Finding no fault with any of the decisions of the district court, its judgment is AFFIRMED.