1999 OK 57

Nita Charlene Pelter COX and Verna Leann Pelter Graybill, Personal Representatives of the Estate of Leora Pearl Pelter, Deceased, Appellees,

v.

KANSAS CITY LIFE INSURANCE COMPANY, Appellant.

No. 91,782.

Supreme Court of Oklahoma.

June 15, 1999.

Gerald P. Green, Haven Tobias, Oklahoma City, Oklahoma, For Appellant.

W.C. Sellers, Jr., Sapulpa, Oklahoma, For Appellees.

WATT, Justice.

¶ 1 This is the third appeal between the parties in this matter. Appellant, Kansas City Life, moved that this Court retain this appeal on the ground that the Court had retained and decided an earlier appeal of the matter, *Cox v. Kansas City Life*, 1997 OK 122, 957 P.2d 1181, decided October 7, 1997. We granted Kansas City Life's motion to retain the current appeal on September 24, 1998.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 The facts and procedural background of this matter are delineated in *Cox v. Kansas City Life*, 1997 OK 122, 957 P.2d 1181, decided October 7, 1997. In that opinion we held that Kansas City Life was not liable on a separate verdict and judgment entered against Kansas City Life's agent, Billy Stearman for $2,193,599.90.

¶ 3 Previous to the appeal that gave rise to our earlier opinion in this matter, both parties sought and obtained a writ of mandamus from us, which directed the trial court to decide whether Kansas City Life was liable for the verdict and judgment against Stearman, which totaled $21,000,000.00.

¶ 4 On November 15, 1996 the trial court entered an "Order Pursuant to Mandamus" in which it ordered Kansas City Life to pay the $1,000,000.00 in actual damages awarded to the Pelters against Stearman, and $1,000,000.00 of the $20,000,000.00 in punitive damages awarded against Stearman, an amount totaling $2,193,599.90, including attorneys' fees, costs, and interest. In the same order the trial court ordered Kansas City Life to pay the Pelters the portion of the verdicts against it that the Court of Civil Appeals had affirmed, $550,000.00 in actual damages and $500,000.00 in punitive damages, an amount totaling $1,466,494.21, including attorneys' fees, costs, and interest through November 7, 1996.

¶ 5 Both the Pelters and Kansas City Life appealed from the trial court's November 15, 1996 order. That appeal gave rise to our opinion in *Cox v. Kansas City Life*, 1997 OK 122, 957 P.2d 1181, decided October 7, 1997.

¶ 6 The Pelters moved for judgment on Kansas City Life's supersedeas bond after we remanded the matter to the trial court in accordance with our October 7, 1997 opinion. Following a hearing on April 15, 1998, the trial court entered judgment, filed July 23, 1998, against Kansas City Life's supersedeas bond respecting post-judgment interest as follows:

Post judgment interest shall be paid from April 8, 1994 until January 1, 1998 at 6.99% then the post-judgment interest is added to 12 O.S. § 727 at 9.22% .with reduction for payment made on April 14, 1998. Post-judgment interest is then added to the remaining unpaid judgment at the end of each subsequent year with the new yearly interest rate then applied to the total. . . .

Kansas City Life then brought this appeal.

¶ 7 The parties' disagreement in this appeal arises in part from differences in their interpretation of the post-judgment interest provision of the judgment entered by the trial court and of 12 O.S. Supp.1997 § 727. The relevant portion of the judgment entered by the trial court on May 12, 1994, provided that post-judgment interest shall accrue

"from April 8, 1994, *at the annual statutory rate* which begins at 6.99 percent per annum for 1994...." [Emphasis added.]

¶ 8   Title 12 O.S. Supp.1991 § 727.J provides, "... Effective January 1, 1998, the method for computing postjudgment interest prescribed by this section shall be applicable to all judgments remaining unpaid rendered prior to January 1, 1998." Section 727.I, provides, " ... interest shall be determined using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year, plus four percentage points."

¶ 9   Title 12 O.S. Supp.1997 § 727.C provides the method by which post-judgment interest shall be computed.[1]   The parties agree that before the 1997 amendments to § 727 the post-judgment interest rate remained at the rate in effect when the judgment was entered and did not allow for the compounding of interest, that is interest on accrued interest.

¶ 10   The 1997 amendment to § 727 changed the manner in which post-judgment interest accrues on judgments in two ways. First, under the 1997 amendment, the interest on the judgment is to be recomputed on 1 January of each year the judgment remains unpaid, whereas before the 1997 amendment the interest rate in effect when the judgment was entered remained the same regardless of how long the judgment remained unpaid. Second, accrued but unpaid interest now bears interest, whereas before the 1997

amendment only unpaid principal bore interest.

¶ 11   On April 14, 1998 Kansas City Life paid $1,468,234.13 to the Pelters, which the parties agree represented payment of the judgment in full, including interest, through November 15, 1996.   The dispute between the parties arises because (1) the trial court's judgment against Kansas City Life's supersedeas bond following the April 15, 1998 hearing, filed July 23, 1998, assessed the part of the post-judgment interest that accrued from and after January 1, 1998 in accordance with the 1997 amendments to 12 O.S. § 727 and (2) because Kansas City Life claims that no interest should be held to accrue on the judgment against it after November 15, 1996, the date of the trial court's Order Pursuant to Mandamus.

¶ 12   The trial court determined that interest would be allowed on the principle amount of the judgment only at the statutory rate of 6.99 percent for the year 1994 from the date of the verdict, April 8, 1994, through December 31, 1997.   The trial court then applied the 1998 statutory interest rate, 9.22 percent, to both the principle and the accrued interest on the judgment, effective January 1, 1998.   Thus, the amount of post-judgment interest owed under the trial court's judgment was $130,308.23 through April 15, 1888, with interest to accrue thereafter on both principle and interest in accordance with the 1997 amendment to 12 O.S. § 727.

¶ 13   Kansas City Life appeals on the ground that post-judgment interest should

1.   In relevant part, § 727.C, as amended in 1997, provides:

... Beginning on the first day of January of the next succeeding calendar year until the end of that calendar year, or until the judgment is paid, whichever first occurs, the judgment, together with the postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during such calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. For each succeeding calendar year, or part of a calendar year, during which a judgment remains unpaid, the judgment, together with post-judgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during such calendar year as certified by

the Administrative Director of the Courts pursuant to subsection I of this section. A separate computation using the interest rate in effect for judgments as provided by subsection I of this section shall be made for each calendar year, or part of a calendar year, during which the judgment remains unpaid in order to determine the total amount of interest for which the judgment debtor is liable. The postjudgment interest rate for each calendar year, or part of a calendar year, a judgment remains unpaid shall be multiplied by the original amount of the judgment, including any prejudgment interest, together with postjudgment interest previously accrued. Interest shall accrue on a judgment in the manner prescribed by this subsection until the judgment is satisfied or released.

not be allowed after November 15, 1996 because the trial court held on that date that, as a matter of law, Kansas City Life's bond "is subject to liability" and that "execution shall issue and collection is allowed." Kansas City Life also contends that equity should be invoked to prevent the Pelters from collecting interest after November 15, 1996 because the Pelters failed to levy execution on the judgment rendered by the trial court against Kansas City Life. For the reasons discussed below we find that the trial court correctly applied 12 O.S. Supp.1997 § 727 and also correctly rejected Kansas City Life's contention that no interest on the judgment against it should accrue after November 15, 1996.

### ¶ 14 ISSUES

I. Was post-judgment interest limited to the rate set by law by the statute in force when the judgment was entered in 1994, 6.99 percent, so that the Pelters are not entitled to the benefit of either compound interest or a fluctuating rate of interest as a matter of law?

II. Are the Pelters prohibited from recovering interest after November 15, 1996 because of either operation of law or on equitable principles?

We answer "no" to each question. .

### DISCUSSION

### I.

POST–JUDGMENT INTEREST WAS NOT LIMITED TO THE RATE SET BY LAW, 6.99 PERCENT, BY THE VERSION OF 12 O.S. § 727 IN FORCE WHEN THE PELTERS' JUDGMENT WAS ENTERED IN 1994 AND THE PELTERS WERE ENTITLED TO THE BENEFIT OF BOTH COMPOUND INTEREST AND A FLUCTUATING RATE OF INTEREST UNDER THE 1997 AMENDMENT TO THE STATUTE, BEGINNING 1 JANUARY 1998.

¶ 15 Kansas City Life argues that the rate of interest in effect when the judgment against it was entered, 6.99 percent, may not be altered. For this proposition Kansas City

Life relies on the following language in *Timmons v. Royal Globe Insurance Co.*, 1985 OK 76 ¶ 13, 713 P.2d 589:

... No term of a judgment may be affected by after-enacted legislation. To hold otherwise would undermine the constitutionally-shielded concept of an "accrued" or "vested" right in the adjudicated obligation. After-passed enactments can neither destroy nor alter that right....

[Footnote omitted.]

¶ 16 *Timmons v. Royal Globe Insurance Co.* does not support Kansas City Life's claim that the trial court erred. The trial court's judgment entered on May 12, 1994 provided that post-judgment interest should accrue "from April 8, 1994, *at the annual statutory rate* which begins at 6.99 percent per annum for 1994...." [Emphasis added.] It is thus clear that the trial court intended that interest not be necessarily limited to 6.99 percent but was to be governed by the terms of 12 O.S. § 727. In *Timmons*, however, the trial court's judgment expressly limited post judgment interest to the rate in effect when judgment was entered.

¶ 17 There is another reason why *Timmons* does not apply to this appeal. Here the trial court applied the new interest rate only prospectively after the passage of the 1997 amendments to 12 O.S. § 727. Those amendments showed that the legislature intended, for the first time, to make changes in the interest rate and compounding apply prospectively. In *Traczyk v. Traczyk*, 1995 OK 22 ¶ 24, 891 P.2d 1277, we held that 12 O.S. § 727 should be interpreted so that "the rate of interest applied to judgments pursuant to § 727(B) is to continue for the life of the judgment." Now, however, 12 O.S. Supp.1997 § 727 provides, "... Effective January 1, 1998, the method for computing postjudgment interest prescribed by this section shall be applicable to all judgments remaining unpaid rendered prior to January 1, 1998." The trial court's judgment correctly followed the current statutory mandate by leaving the 6.99% interest rate in effect through December 31, 1997 and applying the new method of computation called for by the

1997 amendments only to interest accruing from and after January 1, 1998.

■ ¶ 18 Kansas City Life also claims that the trial court's decision to change the interest rate from 6.99 percent in accordance with the 1997 amendments to 12 O.S. § 727 would amount to a relitigation of the same cause of action between the parties and thus violate the constraints of *res judicata*. We disagree. We find unconvincing Kansas City Life's argument that the trial court's decision to apply a later amendment to the post-judgment interest statute was violative of *res judicata*, given that the trial court expressly stated in its original judgment that interest would accrue *"at the annual statutory rate."* Unlike the situation that obtained in *Timmons,* the trial court had no intention of limiting post-judgment interest to 6.99 percent where the legislature amended 12 O.S. § 727 in a way that showed its intention that a different rate of interest would obtain beginning 1 January 1998.

## II.

### THE PELTERS ARE NOT PROHIBITED FROM RECOVERING INTEREST AFTER NOVEMBER 15, 1996 BECAUSE OF EITHER OPERATION OF LAW OR ON EQUITABLE PRINCIPLES.

■ ¶ 19 Kansas City Life contends that the Pelters are not entitled to any post-judgment interest after November 15, 1996 because the trial court ruled on that date that Kansas City Life's bond "is subject to liability" and that "execution shall issue and collection is allowed." Kansas City Life's contention is unconvincing because the November 15, 1996 order ordered Kansas City Life to pay the Pelters an additional amount totaling $1,000,000.00 in actual damages and $1,000,000.00 of the $20,000,000.00 in punitive damages that the jury had awarded against Kansas City Life's agent, Stearman. Both parties appealed from the November 15, 1996 judgment, Kansas City Life on the ground that it was not liable for any part of the Stearman verdict and the Pelters on the ground that Kansas City Life should have to pay the entire $21,000,000.00 of the Stearman verdict.

■ ¶ 20 Generally, "a party who voluntarily accepts benefits of a judgment waives the right to appeal." *Teel v. Public Service Co. of Oklahoma,* 1985 OK 112 ¶ 13, 767 P.2d 391. There are exceptions to this rule—an appeal in which it is only possible to receive a more favorable judgment, but not a less favorable one—*Teel,* 767 P.2d 391, 1985 OK 112 at ¶ 13. Nevertheless, we are not prepared to say that the circumstances of the Pelters' appeal were so clearly risk free that their failure to levy execution on the portion of their judgment owed by Kansas City Life should be held to deprive them of post-judgment interest after November 15, 1996.

¶ 21 Kansas City Life also contends that allowing the Pelters interest would be inequitable under the circumstances of this case. We disagree. There is nothing inequitable about allowing the Pelters interest here. Had Kansas City Life been seriously enough concerned about the interest accruing on the judgment against it, it would only have had to make a tender after November 15, 1996 of the amount of the judgment and accrued interest owed and expressly left open the question of its liability on the Stearman verdict. Kansas City Life did not do so.

¶ 22 In a letter dated August 2, 1996, Kansas City Life offered to pay the entire amount of the portion of the jury's verdict against it that had been affirmed on appeal, plus attorneys' fees and interest, $1,445,-619.24, "in exchange for a complete release and satisfaction of judgment and release of all claims of any kind against Kansas City Life by your clients." The Pelters' counsel, W.C. "Bill" Sellers, responded to Kansas City Life's settlement offer in a letter dated August 7, 1996, which stated. "We appreciate your offer of settlement at $21,445,619.24 for a full release and satisfaction of the judgment."

¶ 23 The Pelters then levied execution on Kansas City Life's supersedeas bond, including the entire $20,000,000.00 amount of the punitive damages judgment against Stearman. The trial court quashed the Pelters' execution in response to Kansas City Life's motion.

¶ 24 It was the hearing following the quashing of the Pelter's execution on Kansas City Life's bond that gave rise to the trial court's order of November 15, 1996, which rendered judgment for the Pelters on the Kansas City Life judgment in the amount of 1,466,494.21. The trial court also rendered judgment against Kansas City Life on the Stearman judgment in the total amount of $2,193,599.90, which judgment we later reversed in *Cox v. Kansas City Life*, 1997 OK 122, 957 P.2d 1181.

██ ¶ 25 The conduct of the parties' counsel makes clear the level of hostility and misunderstanding between them. Kansas City Life clearly had no intention of paying the portion of the verdict the jury had awarded against Kansas City Life without, at the same time, obtaining a release of liability on the Stearman verdict. Further, it seems likely that had the Pelters levied execution on Kansas City Life's bond for only the amount of Kansas City Life's liability, Kansas City Life would have claimed that the Pelters' had waived their right to appeal the Stearman portion of the judgment. Indeed, for the Pelters' counsel to have levied execution on the Pelters' judgment against Kansas City Life would have been foolhardy. Consequently, we are unwilling to hold that the Pelters decision not to seek judgment on Kansas City Life's bond for the portion of the judgment entered against Kansas City Life deprived the Pelters of their right to interest that accrued after November 15, 1996.

¶ 26 Kansas City Life admits that there is no Oklahoma authority directly in point, but relies on *Overbeek v. Heimbecker*, 101 F.3d 1225 (7th Cir.1996) in support of its claim that allowing the Pelters post-judgment interest after November 15, 1996 would be inequitable. *Overbeek* is inapposite to the facts of this appeal. In *Overbeek* the Court of Appeals affirmed the trial court, which had refused to allow interest on a $25,000.00, the policy limits, judgment against the defendant's insurance carrier. There, the insurer had offered to pay its policy limits on thirteen separate occasions, and occasionally had offered to pay double its policy limits for a release. The carrier began making these offers before trial. Plaintiff's counsel consistently refused to accept the carrier's offers.

¶ 27 There was never any serious question in *Overbeek* that the insurance carrier could be liable for any more that its policy limits. Here, however, the question of Kansas City Life's liability on the Stearman verdict was open until October 7, 1997, when we decided the matter in *Cox v. Kansas City Life*, 1997 OK 122, 957 P.2d 1181. Indeed, the trial court imposed liability against Kansas City Life on the Stearman verdict in its November 15, 1996 Order Pursuant to Mandamus, entered shortly after Kansas City Life had made its settlement offer to the Pelters.

## CONCLUSION

¶ 28 The trial court correctly applied 12 O.S. § 727 in the judgment filed July 23, 1998 and there is no reason, either in law or in equity, to refuse the Pelters post-judgment interest after November 15, 1996.

## TRIAL COURT JUDGMENT AFFIRMED

¶ 29 SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, LAVENDER, OPALA, and ALMA WILSON, JJ., concur.

¶ 30 SIMMS, J., concurs in part, dissents in part.

¶ 31 KAUGER, J., recused.