IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 3, 2009 Session

# GREAT AMERICAN INSURANCE COMPANY OF NEW YORK ET AL. v. FEDERAL INSURANCE COMPANY ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 08-2255-II     Carol L. McCoy, Chancellor**

───────────────

**No. M2009-00833-COA-R3-CV - Filed April 28, 2010**

───────────────

This is a dispute between two insurance companies, each of which provided liability insurance for a Captain D's restaurant in Mississippi. The defendant, Federal Insurance Company, provided the primary coverage for Captain D's with policy limits of $1,000,000. The plaintiff, Great American Insurance Company of New York, provided excess coverage for the benefit of Captain D's. When an action was filed against the insured in Mississippi for serious and permanent injuries sustained by a 15 year-old minor at a Captain D's, Federal provided the defense for Captain D's. The jury returned a verdict of $20.8 million against Captain D's. The next day, Federal sent a letter to its insured, Captain D's, and to the excess carrier, Great American, offering to pay its policy limits of $1,000,000 toward the judgment; however, Federal's "offer to pay" was not communicated to Foradori, the plaintiff in the Mississippi action. Federal appealed the $20.8 million Mississippi judgment on behalf of Captain D's, but the judgment was affirmed. Post-judgment interest of $2,269,169 accrued during the appeal. When the judgment became final, Federal paid its policy limits of $1,000,000, but no interest. Great American paid the balance of the judgment plus all of the post-judgment interest.

Great American then filed this action against Federal seeking to recover the post-judgment interest it paid for the benefit of Captain D's. Great American contends it is equitably subrogated to the rights of Captain D's against Federal and that Federal is liable to Captain D's for all post-judgment interest based on the Supplementary Payments provision of Federal's policy of insurance. The Supplementary Payments provision provides that Federal will pay, with respect to any suit against an insured it defends, "all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance."

The Chancellor summarily dismissed all of Great American's claims against Federal finding *inter alia* that Federal's letter to Captain D's and Great American satisfied the "offer to pay" provision of its policy, which relieved Federal of any liability for the post-judgment interest. We have determined that Federal's so-called offer to pay did not satisfy the terms of its policy because the "offer" was not communicated to the plaintiff in the underlying action. Therefore, Federal was not entitled to summary judgment based on the offer to pay exception. Accordingly, we reverse and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Michael J. Vetter, Nashville, Tennessee, for the appellants, Great American Insurance Company of New York and The Ohio Casualty Insurance Company.

William B. Jakes, Nashville, Tennessee, for the appellees, Federal Insurance Company and The Chubb Corporation.

### OPINION

This civil action arises from a $20.8 million judgment rendered against Captain D's, LLC, in the United States District Court for the Northern District of Mississippi, in *Mike Foradori, Guardian of the Person and Estate of Michael Foradori, Jr. v. Captain D's, LLC, et al.*, No. 1:03 CV 669.

Michael Foradori, Jr., a 15 year-old patron of a Captain D's restaurant in Tupelo, Mississippi, who sustained serious and permanent injuries outside the Captain D's restaurant in 2000, sued Captain D's for his injuries. At the time of the incident, Captain D's was insured by Federal Insurance Company ("Federal") pursuant to a Commercial General Liability Insurance policy. Federal was the primary insurer of Captain D's concerning Mr. Foradori's claim and its policy limit for the claim asserted by Mr. Foradori was $1,000,000. Captain D's was also insured by Great American Insurance Company of New York ("Great American"), which provided excess coverage. Both carriers were timely notified of the claim and Federal, as the primary carrier, provided the defense for Captain D's throughout the *Foradori* case.

On October 11, 2005, a jury found Captain D's liable for Foradori's injuries and awarded judgment against Captain D's of $20.8 million.[1] The next day, Federal sent a letter to Captain D's and Great American, but not Foradori or his attorney, offering to pay $1,000,000 toward the satisfaction of the judgment against the restaurant. The October 12 letter, which was signed by Federal's Litigation Examiner, Joe Eidsness, was addressed to Phil Purcell at Captain D's principal office in Nashville, Tennessee, with copies to Captain D's attorneys in the Mississippi action and to officials at Great American. It stated in pertinent part:

> Dear Mr. Purcell:
>
> This letter acknowledges our notification by defense counsel that the jury rendered a verdict last night, October 11, 2005, of approximately $20.8 million against Captain D's. Further, defense counsel has advised the judgment should be entered today.
>
> Federal, at . . . Captain D's direction, offers to pay $1,000,000 to the Plaintiff toward the satisfaction of his judgment against Captain D's. The $1,000,000 represents the limits of insurance under . . . Captain D's Commercial General Liability Insurance . . . with Federal.
>
> . . . Accordingly, by offering to pay the applicable Limit of Liability, Federal satisfies its interest payment obligation under the above policy and thereby extinguishes its duty to pay any interest on the judgment that accrues after entry.
>
> If you have any questions regarding this offer, please contact us at your convenience. . . .

Neither Captain D's nor Great American responded to the letter from Federal. Thereafter, Federal pursued an appeal of the $20.8 million jury verdict. The verdict was affirmed on April 1, 2008 by the U.S. Fifth Circuit Court of Appeals.[2] Thereafter, post-

---

[1] The jury returned a verdict in favor of Foradori, awarding him $10 million for past, present, and future physical pain and suffering, mental anguish, and the loss of enjoyment in life; $1,581,884.41 for reasonable and necessary medical expenses already incurred, $8 million for the present value of the reasonable and necessary medical expenses reasonably likely to be incurred in the future, and $1.3 million for the present value of loss of future earnings or earning capacity resulting from his disability.

[2] *See Foradori v. Harris*, 523 F.3d 477 (5th Cir. 2008).

judgment interest in the amount of $2,469,169 was assessed against Captain D's pursuant to 28 U.S.C.A. § 1961.

Federal then paid its policy limits of $1,000,000 toward the judgment; however, Federal did not pay any of the interest. As the excess carrier, Great American then paid the balance of the judgment and all interest thereon to indemnify its insured, Captain D's, from any further losses. Great American then filed this action in the Chancery Court of Davidson County to recover from Federal the interest it paid on behalf of Captain D's.

In this action, Great American is asserting the rights of Captain D's under the Supplementary Payments provision of Federal's liability insurance policy with Captain D's. Great American asserts that it has the right to bring this claim against Federal based on the doctrine of equitable subrogation, meaning that it is subrogated to the rights of Captain D's. Specifically, it asserts, *inter alia*:

> Great American Insurance Company of New York and The Ohio Casualty Insurance Company[3] aver that they are entitled to a declaration that the Federal Insurance Company and/or The Chubb Corporation[4] insurance policy provides for the payment of the interest that accrued during the appeal, that Federal Insurance Company and/or The Chubb Corporation improperly failed to pay the interest, for a declaration of the rights of the parties under the policies, and for a judgment against Federal Insurance Company and/or The Chubb Corporation.

The Supplementary Payments provision in Federal's policy states that Federal would pay all interest on the full amount of any judgment regarding interest that accrued on any judgment against its insured, Captain D's. The relevant provision reads as follows:

> [Federal] will pay, with respect to any claim we investigate or settle, or any suit against an insured we defend:
>
>> all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay,

---

[3]The Ohio Casualty Insurance Company is the transferee of certain liabilities and related assets of Great American Insurance Company of New York, by agreement dated September 14, 1998, including the insurance policy applicable to Captain D's and the underlying lawsuit against Captain D's.

[4]Federal Insurance Company is a wholly-owned member insurer of the Chubb Group of Insurance Companies. The insured was Shoney's Inc. and several of its affiliates, including Captain D's, LLC.

or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

Federal defended insisting, *inter alia*, that it was relieved of any liability for post-judgment interest because it offered to pay its policy limits the day after the Mississippi jury rendered its verdict; thus, it was not liable to either Captain D's or Great American. The issues were resolved in the Chancery Court on summary judgment. The chancellor found in favor of Federal, summarily dismissing the claims of Great American, finding in pertinent part that Federal's letter to Captain D's and Great American was an offer to pay within the meaning of the policy which relieved Federal of any duty to pay post-judgment interest. This appeal followed.

### STANDARD OF REVIEW

The only issue on appeal is whether the trial court erred by granting summary judgment to Federal. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

Summary judgments are proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd*, 847 S.W.2d at 210; *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001); however, they are not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that party is entitled to judgment as a matter of law. *Godfrey*, 90 S.W.3d at 695. Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any

material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000). Thus, as the moving party, Federal needed to affirmatively negate an essential element of Great American's claim or establish an affirmative defense to defeat Great American's claim.

## ANALYSIS

Great American contends that the trial court erred in failing to recognize its equitable right of subrogation against the primary carrier, Federal, to recover post-judgment interest based on Captain D's rights under the Federal insurance policy. It also contends that the trial court erred in finding that Federal's letter to Captain D's and Great American constituted an offer to pay within the meaning of the policy, relieving it of liability for interest that accrued thereafter. We will discuss each issue in turn.

### EQUITABLE RIGHT OF SUBROGATION

The chancellor ruled that Great American had no right of subrogation against Federal under the undisputed facts of this case.[5] We have concluded that Great American does have an equitable right of subrogation under the undisputed facts of this case.

Tennessee has recognized the doctrine of equitable subrogation in several contexts. *Acuity v. McGhee Engineering, Inc.,* 297 S.W.3d 718, 724 (Tenn. Ct. App. 2008); *Bankers Trust Co. v. Collins*, 124 S.W.3d 576, 579 (Tenn. Ct. App. 2003). In *Acuity*, this court conducted a thorough examination of the principles of equitable subrogation in the context of performance bonds.[6] *Acuity,* 297 S.W.3d at 724-25. The court noted that equitable subrogation "'does not arise from any contractual relationship between the parties, but *takes place as a matter of equity, with or without an agreement to that effect.*'" *Id*. at 724 (citing *Hartman v. State*, No. M2002-01430-COA-R3-CV, 2003 WL 1872648, *6 (Tenn. Ct. App. Apr. 14, 2003) (quoting 83 C.J.S. *Subrogation* § 4 (2000)) (emphasis added).

---

[5]Specifically, the chancellor found that "[u]nder the undisputed facts of this case and the legal authority that has been cited to the Court by the parties, the plaintiffs have no right of subrogation against the defendants."

[6]A performance bond is "[a] third party's agreement to guarantee the completion of a construction contract upon the default of the general contractor." *Acuity,* 297 S.W.3d at 724 (quoting Black's Law Dictionary 1174 (8th ed. 2004)).

Equitable subrogation is based on the principle that "'substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form.'" *Acuity,* 297 S.W.3d at 724 (citing *Castleman Constr. Co. v. Pennington*, 432 S.W.2d 669, 674 (Tenn. 1968) (quoting 83 C.J.S. *Subrogation* §§ 1-2)).

It was noted in *Acuity* that the Tennessee Supreme Court previously held that "an insurer was subrogated to the rights its insured had against others when the insurer paid its insured's claim." *Acuity*, 297 S.W.3d at 724 (citing *Almany v. Nationwide Ins. Co.*, No. 85-341-II, 1987 WL 4745, *4 (Tenn. Ct. App. Jan. 29, 1987)) (other citations omitted). Equitable subrogation has also been applied under Tennessee law by the United States District Court of West Tennessee in *Electric Ins. Co. v. Nationwide Mut. Ins. Co.*, 384 F. Supp. 2d 1190, 1193 (W.D. Tenn. 2005). The relevant issue in that matter was whether the plaintiff, an excess carrier, had a right of subrogation against a primary carrier. Two of the five claims asserted by the plaintiff, Electric Insurance Company, are relevant to the issue here. In count one, the excess carrier asserted that its insured had assigned to it the claim that the primary carrier, Nationwide, breached its duty of good faith by failing to settle his claim within Nationwide's policy limit. *Electric*, 384 F. Supp. 2d at 1193. The court found that a cause of action against an insurer for bad faith in refusing to settle an insurance claim within the policy limit is not assignable under Tennessee law, citing *Dillingham v. Tri-State Ins. Co.*, 381 S.W.2d 914, 917-19 (Tenn. 1964); thus, the bad faith claim was dismissed. *Electric,* 384 F.Supp.2d at 1193.

The court, however, reached a different conclusion regarding the excess carrier's claim that was based on the equitable right of subrogation. The primary carrier, Nationwide, sought to dismiss the claim by contending that such a claim was not assignable. *Id*. The excess carrier countered asserting that the policy it issued to its insured expressly afforded it the right of subrogation to pursue any claims the insured might have against a third party, including Nationwide. *Id*. The court held that a right to subrogation was not based on a right of assignment; instead, it was "an equitable doctrine designed to obtain substantial justice and to prevent wrongdoing" that "arises when a person, even if for his own benefit, pays a debt for which another is also liable." *Id.* (citing *Almany*, 1987 WL 4745, at *4). Accordingly, the federal court held that the excess carrier had a viable claim against the primary carrier based on the equitable right of subrogation.

In *Almany,* the case frequently cited in *Electric*, this court recognized that an equitable right of subrogation "arises when a person, even if for his own benefit, pays a debt for which another is also liable," *Almany,* 1987 WL 4745, *4 (citing *Greenlaw v. Pettit*, 11 S.W. 357, 360 (Tenn. 1889); *Amos v. Central Coal Co.*, 277 S.W.2d 457, 462 (Tenn. Ct. App. 1954)), and when the insurer pays its insured's claim. *Id*. (citing *Lancaster Mills v. Merchants*

*Cotton-Press & Storage Co.*, 14 S.W. 317, 330 (Tenn. 1890)). Further, and more on point, the Sixth Circuit Court of Appeals has also applied the doctrine of equitable subrogation to disputes between an excess carrier and a primary carrier. *See National Sur. Corp. v. Hartford Cas. Ins. Co.,* 493 F.3d 752 (6th Cir. 2007).[7] In that matter the court permitted an excess insurer "to step into the shoes of the insured and sue a primary insurer pursuant to the doctrine of equitable subrogation." *Id*. at 759.

Federal, however, contends that Great American does not have a viable claim for three reasons. One, Federal is guilty of no "wrongdoing." Two, Great American has not paid "a debt for which another [Federal] is also liable." Three, there are no "shoes" for Great American to step into because "the insured, Captain D's, has been fully indemnified and has suffered no loss." We are not persuaded by these arguments because the principles underlying the doctrine of equitable subrogation do not require there to be a "wrongdoing," and there is no requirement that there be "a debt," as distinguished from another type of financial loss. Moreover, contrary to Federal's third argument, there are shoes to step in. Captain D's was liable for post-judgment interest in excess of $2,000,000 and Great American "stepped in" Captain's D's shoes by paying the post-judgment interest.

Based upon the foregoing equitable principles and the undisputed facts of this case, we have concluded that Great American is subrogated to the rights of Captain D's and, therefore, has standing to assert the contractual rights of Captain D's against Federal. The success or failure of that claim, however, depends upon the relevant facts and the equities of this case, s*ee Castleman*, 432 S.W.2d at 674-75; accordingly, we turn our attention to whether Federal is or is not obligated to pay interest pursuant to the Supplementary Payments provision of the policy of insurance.

## OFFER TO PAY

The trial court held that Federal's October 12, 2005 letter addressed to its insured, Captain D's, and to counsel for the excess carrier, Great American, constituted an offer to pay within the meaning of its policy of insurance; therefore, Federal was released from any liability for post-judgment interest that accrued thereafter. Great American contends this was error. We agree.

Federal's insurance policy with Captain D's provided that Federal would pay with respect to any suit against an insured it defends: "all interest on the full amount of any

---

[7]The Sixth Circuit Court of Appeals in *National Sur. Corp. v. Hartford Cas. Ins. Co.,* 493 F.3d 752 (6th Cir. 2007) (a Kentucky case in which the doctrine of equitable subrogation was at issue), noted that only two states, Alabama and Idaho, have not adopted the equitable doctrine.

judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance." Therefore, Federal had three options to avoid liability for post-judgment interest: it could pay its policy limits, it could offer to pay policy limits, or it could deposit its policy limits in court. Any of these options, if executed properly, would relieve Federal of liability to Captain D's for post-judgment interest. Federal chose option number two, to make an "offer to pay" its limits of liability, $1,000,000, to its insured, Captain D's, and to the excess carrier, Great American, but not to the plaintiff, Foradori. The letter setting forth the so-called offer to pay states: "Federal offers to pay $1,000,000.00 to the Plaintiff toward the satisfaction of his judgment against Captain D's." The letter was dated October 12, 2005, one day after the Mississippi verdict. It is undisputed that the appropriate representatives and counsel for Captains D's and Great American received the letter in a timely fashion. It is also undisputed that the letter was not addressed and it was not delivered to the plaintiff, Michael Foradori, or his attorney; thus, the plaintiff did not know that Federal had made the "offer to pay" stated in the October 12, 2005 letter.

Asserting Captain D's right under the policy, Great American contends that Federal's letter did not constitute an offer to pay under the policy of insurance because the plaintiff, Foradori, was the only party that could have accepted or rejected Federal's "offer to pay."

Federal's policy of insurance does not define "offer to pay." Therefore, whether the October 12, 2005 letter constitutes an offer to pay as required by the policy of insurance presents a matter of contract construction. In resolving such an issue, it is the duty of the court to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

> The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 AM. JUR. 2d, *Contracts* § 245).

> This Court's initial task in construing the Contract at issue is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning

of the language controls the outcome of the dispute. *Id.* A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id.* (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id.* Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id.*

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698-99 (Tenn. Ct. App. 2005).

We have determined the meaning of the provision "offer to pay" in Federal's policy of insurance cannot *fairly* be understood in more than one way; thus, it is not ambiguous. As its policy expressly provided in the section titled "**Investigation, Defense And Payment of Damages**," Federal had the right and duty to investigate and defend Captain D's against the suit brought by Foradori, and it did just that. Under the section that immediately followed, **Supplementary Payments**, Federal had the right to make an offer to pay policy limits, in which event it would be relieved of liability for interest that accrued thereafter. Making such an offer to itself would of course not constitute a valid offer to pay. Further, making an offer to its insured or to its insured's excess carrier does not constitute a valid offer to pay when the insurer, in this case Federal, is defending and indemnifying the insured from a claim by another. Making an offer to pay without communicating the fact to the payee reminds the author of the time the Dean of a college placed a fraternity on "super secret double probation" without communicating that fact to the fraternity. NATIONAL LAMPOON'S ANIMAL HOUSE (Universal Pictures 1978).

Contrary to Federal's argument, an offer to pay on behalf of its insured may not remain a secret to the party asserting the claim against the insured; instead, it needed to be communicated to the insured's adversary to constitute an offer to pay. Sharing the so-called offer to pay with its insured and the excess carrier, but not the plaintiff, fails to constitute an offer to pay under the policy at issue.

Federal has not cited any authority that directly supports its assertion that its offer to pay was in compliance with the Supplementary Payments provision of its policy of insurance. Moreover, we have not found any authority in this or any other jurisdiction that supports Federal's position. Furthermore, we have reviewed the two cases Federal cites in support of its position but neither of them are directly on point and we do not find them persuasive. The cases Federal relies on are *Sentry Select Ins. Co. v. TIG Ins. Co.*, No. 1:02-CV-1875-LJM-

WTL, 2004 WL 1689391 (S.D. Ind. 2004) and *Overbeek v. Heim Becker*, 101 F.3d 1225 (7th Cir. 1996).[8]

The decision in *Sentry* has a very similar factual scenario to this action, but with one material difference – the insurer's offer to pay was communicated to the plaintiff in the underlying action. Like the case at bar, the dispute in *Sentry* was between two insurers, a primary insurer, Sentry Select Insurance Company, and an excess carrier, TIG Insurance Company, and like here the dispute pertained to which insurer should pay the post-judgment interest on a judgment in the underlying wrongful death suit. *Sentry*, 2004 WL 1689391, at *2. The Sentry insurance policy contained a provision very similar to that of Federal. It stated: "our duty to pay interest ends when we have *paid, offered to pay or deposited in court* the part of the judgment that is within our Limit of Insurance." *Id.* (emphasis added). The court noted that "the plain language of the Sentry Policy supports Sentry's position that its obligation to pay post-judgment interest terminated when it offered to pay the policy limits." *Id.* at *4. The court then determined that Sentry was not responsible for post-judgment interest because Sentry had "offered to pay" to the plaintiff its policy limits on numerous occasions prior to trial. *Id.* at *5. We, however, find *Sentry* distinguishable because Sentry's "offer to pay" was made to the plaintiff, not to Sentry's insured or to the excess carrier as in this case.

In *Overbeek*, the plaintiff was injured in an automobile accident with the defendant. At the conclusion of the trial, the plaintiff was awarded judgment against the defendant and sought to recover interest on the judgment. *Overbeek*, 101 F.3d at 1227. The court denied the plaintiff's request to recover interest on the judgment finding the interest accrued "solely due to the intransigence of the plaintiff's counsel and to award interest to the plaintiff would be "grossly unfair." *Id.* at 1228. Significant to the case at bar, the *Overbeek* ruling was based on the fact the defendant's insurer made thirteen offers to pay the extent of its liability coverage prior to trial and the plaintiff's attorney rejected each offer. *Id.*

Neither of the parties to this action cited a case that directly supports Great American's assertion. We did, however, find an unpublished opinion of the United States Fourth Circuit Court of Appeals, *Richmond v. Nobel Insurance Company*, 22 F. App'x 246

---

[8]We also find cases cited by Great American unpersuasive. For example, in one of the cases it cites the insurer did not make an offer to pay for the full extent of its liability, meaning the policy limits. *See National Union Fire Ins. Co. v. Liberty Mutual Fire Ins. Co.*, No. 05 Civ. 5262(DLC), 2006 WL 1711597 (S.D.N.Y. June 22, 2006). In that case, the insurer made a high/low settlement offer, not an offer to the full extent of their liability coverage; thus, the case is readily distinguishable.

(4th Cir. 2001).[9] In its affirmance of the decision of the District Court, the Fourth Circuit held that an offer to pay policy limits in a letter from Nobel Insurance Company to its insured, but not the plaintiff, did not constitute an offer to pay under its policy. To be relieved from the duty imposed by the policy to pay interest on the judgment, the *Richmond* court reasoned, the offer to pay had to be made to the plaintiff, not the insured.[10] *Id*. at 247. Because Nobel Insurance Company's offer to pay was not communicated to the plaintiff, the Court held that Nobel was liable for the interest that accrued on the judgment. We find this reasoning very logical and persuasive.

The foregoing authorities and the language in the policy of insurance at issue are more than sufficient to convince this court that Federal's offer to pay had to be communicated to Foradori, the plaintiff in the underlying action, to constitute a valid offer to pay under the "Supplementary Payments" provision of the policy. Nevertheless, had we found the provision ambiguous, which we do not, any ambiguous language in the contract would be construed against the drafter of the contract. *Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. Ct. App. 1989). It is undisputed that Federal was the drafter of the policy of insurance. Moreover, if the provision was ambiguous, we find an "offer of judgment" under the Tennessee Rules of Civil Procedure analogous to an "offer to pay" under Federal's policy. Tenn. R. Civ. P. 68 states that a party may make an offer of judgment in the following manner:

> a party defending against a claim *may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money* or property, or to the effect *specified in the offer*, with costs then accrued. . . . If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, either party may file the offer and notice of acceptance, together with proof of service thereof, with the court and thereupon judgment shall be rendered accordingly. . . .

---

[9]*Richmond v. Nobel Insurance Company*, 22 F. App'x 246 (4th Cir. 2001) was not recommended for publication. The Fourth Circuit previously placed certain restrictions on citing unpublished dispositions issued prior to Jan. 1, 2007; nevertheless, the rule permitted citing the court's unpublished dispositions if it was believed it had "precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well. . . ." *See* 4th Cir. R. 32.1. Restricting citations to unpublished dispositions, however, was prohibited with the adoption of Rule 32.1 of the Federal Rules of Appellate Procedure. The comments to the rule explain that it was adopted to replace the inconsistent standards with one uniform rule, and it provides that a court may not prohibit a party from citing an unpublished opinion for its persuasive value or for any other reason. *See* Fed. R. App. P. 32.1(a) cmt.

[10]The policy between Nobel Insurance and Richmond required Nobel to pay post-judgment interest on any judgment resulting from any suit it defended, except if it "paid, offered to pay or deposited in court" the portion of the judgment within its policy limits.

Rule 68 requires that the offer be served upon the "adverse party." Accordingly, an offer of judgment that is not communicated to the insured's adversary does not constitute an offer of judgment under Tenn. R. Civ. P. 68.

An insurer that is defending a civil action brought by a party adverse to its insured may not serve an offer on its insured to affect a valid offer of judgment because the insured is not the adverse party. *See* Tenn. R. Civ. P. 68. The same rational applies with an offer to pay; an insurer that is defending a claim against its insured must serve an "offer to pay" upon the insured's adversary for it to constitute a valid offer to pay. Accordingly, the October 12, 2005 letter that Federal sent to its insured and its insured's excess carrier, and which was never communicated to its insured's adversary party, cannot be fairly construed as a valid offer to pay.

Based upon the above persuasive authority, we find that the October 12, 2005 letter was not "an offer to pay" within the meaning of Federal's policy; therefore, Federal was not relieved of the duty it owed to Captain D's to pay post-judgment interest under the policy of insurance.

### IN CONCLUSION

For the foregoing reasons, we reverse the grant of summary judgment in favor of Federal Insurance Company, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellee, Federal Insurance Company.

_____
FRANK G. CLEMENT JR., JUDGE